## State vs. Montylaoo A. Cole.

*Criminal Law—Juror—Murder—Manslaughter—Malice—Insanity —Reasonable Doubt—Evidence.*

1. A juror is not disqualified on account of having said to counsel for the prisoner just before being called, that he had better not take him on the jury, if he did not want his client convicted, or words to that effect.

2. Murder of the first degree, and murder of the second degree, defined— Manslaughter defined—Malice defined.

3. Every man is presumed to contemplate and intend the ordinary and natural consequences of his own acts.

4. In a case where the defense is insanity, in order to exempt a person from responsibility for a criminal act, the controlling power of the insanity, whether arising from delusion or from real cause, must be so intense and overwhelming as utterly to deprive the party of his reason at the time, and in regard to the act charged as criminal. If he had sufficient capacity at the time to distinguish between the right and wrong of the particular act; if he had sufficient capacity to know that that act was wrong, and the power to choose whether he would do it or not, he is responsible for it, and for all its fatal consequences.

5. Every man is presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crime, until the contrary be proved to the satisfaction of the jury.

6. Insanity being matter of defense, the burden of showing it lies on the prisoner. It must be proved as any other fact to the satisfaction of the jury. Exhibitions of mere eccentricity of mind, manner or conduct will not excuse him; and insanity should not be confused with drunkenness, anger, wrath or revenge.

7. If the jury should be satisfied from the evidence that the prisoner, at the time he gave the mortal wound, was laboring under such a disease of the mind as to render him for the time being incapable of distinguishing between the right and the wrong of that act, or without the power to choose whether or not he would do the act. they should acquit him on the ground of insanity, and should so return their verdict, But if satisfied that he was then capable of so distinguishing, and had the power of so choosing, they may, if the evidence shall so warrant, find the prisoner guilty of murder of the first degree, or of murder of the second degree, or of manslaughter.

(*November 23–25, 1899.*)

Lore, C. J., and Spruance and Grubb, J. J., sitting.

*Robert C. White*, Attorney-General, and *Peter L. Cooper, Jr.*, Deputy Attorney-General, for the State.

*Sylvester D. Townsend* and *Walter H. Hayes* for defendant.

Court of Oyer and Terminer, New Castle County,—beginning November 25, 1899.

The defendant, Montylaoo A. Cole, was indicted by the grand jury in September, 1899, and the case was postponed to November, on account of the absence of a material witness for the defense.

The prisoner was charged with murder of the first degree of William A. Montague, of Wyoming, Delaware, on May 17, 1899, on East Second Street in the City of Wilmington. The testimony showed that Cole, who was a student in the dental department of the University of Pennsylvania, had been very intimate with a young girl named Edna Wilson. She came to Wilmington early in 1899 and stopped at a disreputable house, No. 227 Orange Street, where she met Montague; that Cole came to Wilmington two days before Montague was killed, and in company with Montague and Edna Wilson visited the Western Hotel; and that they all three spent the night at 227 Orange Street, Cole leaving early the next morning for Philadelphia, for the purpose of resuming his studies at the University of Pennsylvania; that Cole and Montague shook hands before Cole left and parted friends; that two days later Cole came back to Wilmington with a fellow student, bringing a baseball bat with them from Philadelphia; that they went to the Western Hotel and that Cole inquired of the clerk if Montague and the girl, Edna Wilson, had been in there that evening. Being informed that they had not, on leaving the hotel he remarked, " We will get the son of a bitch (or the sucker) before we leave town." Cole and his friend next appeared at 227 Orange Street, where Cole, in the presence of several witnesses, swung the baseball bat around his head and said he " would cover the bat with

gray matter and gore; that he would decorate the bat, that the bat would either kill him or somebody else before he left town;" and also remarked while flourishing a knife, the point of which he stuck in the table and broke off, "that he would dig Edna Wilson's heart out." That at the suggestion of some of those present, Cole, accompanied by William A. Moore, with some other young men preceding them, left the house, and while passing along Second street near King, met Montague and the girl; that Cole asked the girl what she was doing there, and without another word, struck Montague alongside of the head with the baseball bat, which he had brought with him from the house, felling him to the street; that Montague, while lying in the gutter was struck by Cole twice more upon the head, and that the latter then ran away but was overtaken and arrested at Front and French streets by the police officer. Montague was taken to the Delaware Hospital the same night and died there a week later.

The defense was based on insanity. It was proved that Cole's father was insane at the time of his death, and had been insane for many years before his death, and had had a prior attack of insanity in the early part of the sixties, and antedating the birth of the prisoner, Cole, who was born in 1875. It was also proved that Cole's maternal grandmother and two maternal uncles were crazy. Several witnesses from Philadelphia testified that Cole had been studying very hard prior to May 17th, in order to be up with his examinations, and that he acted like a crazy man a few days before the tragedy, and also on the day it happened. The State proved in rebuttal by various witnesses who were with Cole at the time Montague was killed, and immediately prior thereto, that in their judgment he was not insane at the time.

During the selection of the jury, Edwin C. Clark was called, and having been sworn on his *voidire, Mr. Hayes* asked the following question for the purpose of laying ground for challenge for cause:

Q. Did you this morning out in the hall here say to Mr.

Sylvester D. Townsend that he had better not take you on this jury if he did not want Cole convicted, or words to that effect?

A.   I asked him to challenge me.

Q.   Did you say words to that effect?

A.   I do not know; something that way.  I simply asked him to challenge me.   That is what I meant for him to do.   I do not think I put the "convicted" in.

By *Mr. Cooper:*

Q.   Have you not said to me once or twice, in a joking way, that the State had better not take you on the case?

A.   Yes, sir.

Q.   Was that the same way in which you spoke to Mr. Townsend?

A.   Yes, sir.

*Mr. Hayes:*—I think the witness has absolutely disqualified himself.

LORE, C. J.:—The majority of the Court think that this is not a disqualification.   If it be so, then every juror who did not want to sit upon a case could intimate in some way or other that you had better not take him, and we would never get these cases tried, as it is an exceedingly unpleasant thing to sit in judgment upon a human life.

GRUBB, J. (dissenting):—My opinion is that a juror who has such a disregard for the gravity of the situation where a human life is at stake, and has the levity of mind to go to counsel on either side and say what this juror has admitted he said, is unfit to sit and deal seriously and gravely and impartially with a case involving the issue of life and death.   Therefore, I say he ought not to be allowed to sit in the case at all.

I do not think that his disqualification would lead to every juror doing that thing.   In my opinion it is a disregard of his duty,

summoned and sworn as he is, as a juror, and in my opinion it is a contempt of Court; and if the jurors who repeat this thing are punished by the Court, as in my opinion, the Court has the power to do, it would stop this thing as it ought to.

The defendant excepted to the majority ruling of the Court.

PRAYERS ON THE PART OF THE STATE.

The State prayed the Court to instruct the jury in part as follows:

*First.* What constitutes murder of the first degree?

*Second.* That the statements of the prisoner on the night of the seventeenth of May in the saloon at Fourth and Orange streets, that he would get the sucker, or get the son of a bitch before he left town, and also his statements in the house at 227 Orange street, that he would cover the deadly instrument, the baseball bat, which he carried in his hand, with blood and gore, with gray matter, that he would decorate the deadly weapon, together with the fact that he stood over his prostrate victim, and struck him twice over the head after he lay senseless upon the ground, must be taken by the jury as absolutely conclusive as to express malice if they believe such evidence.

*Third.* That every person is presumed to be sane until the contrary is shown, and the burden of proving insanity rests upon the defendant which he must establish beyond a reasonable doubt and to the satisfaction of the jury, before it can shield him from the natural consequences of his own deliberate act.

*State vs. Danby, Houst. Crim. Cases, 173 ; State vs. Harrington, 9 Houst., 376 ; State vs. Thomas, 1 Houst. Crim. Cases, 525–530.*

*Fourth.* To excuse one from crime on the ground of insanity it

must be established to the satisfaction of the jury not only that the defendant had insane delusions or was, at times, melancholy, but that he was insane upon the particular act committed; otherwise it would be no excuse for his crime, and he is equally guilty as if he had no delusion or melancholia and was perfectly sane. In this State the test has invariably been, has the defendant the ability to comprehend the difference between right and wrong in respect to the very act with which he stands charged?

*State vs. Windsor, 5 Harr., 512; State vs. Dillehunt, 3 Harr., 551; State vs. Hurley, 1 Houst. Crim. Cases, 371.*

*Fifth.* That a jury is never warranted in inferring that a man is insane from the mere fact of his committing a crime, or from the enormity of the crime, however shocking and repulsive in its nature it may be, for the law assumes that there is a bad motive and a wicked heart, and that these shocking details were premeditated by malice.

*Commonwealth vs. Lynch, 2 Lawson's Criminal Defences, 148.*

### PRAYERS ON THE PART OF THE DEFENDANT.

*First.* To constitute a crime against human law, there must be, first a vicious will. It is a rule established by legal authorities, that an act and an evil intent must combine to constitute, in law, a crime.

*4 Blackstone Com. (Chitty Ed.) 14 and 21; 1 Bishop Crim. Laws, Sec. 20.*

*Second.* While the law holds every man against whom there is proof of the commission of crime to have been of sound mind at the time he did it, this presumption is not a conclusive one, but may be successfully rebutted by proof, provided it be satisfactory to the jury. If such proof be sufficient to create, in the minds of the jury, a well founded, reasonable doubt upon the point of the sanity of the prisoner at the time the act was done, the prisoner is to be given the benefit of it; for the law humanely holds every man to be innocent until shown by adequate proof to be guilty. When the pre-

sumption of sanity is made doubtful by countervailing evidence, facts or circumstances,—the doubt, in a criminal case, is not to be resolved by what is called the superior weight of the State's testimony merely ; but such testimony must be of so convincing a character as, upon consideration by the jury, removes the doubt altogether. Not until all reasonable doubts of the criminality of the prisoner are removed, after a calm, deliberate, impartial and unbiased consideration of all the facts and circumstances shown in proof both for and against him, can the jury properly render a verdict of guilty.

If, upon all the presumptions of law and evidence in this case, there should remain in the minds of the jurors a reasonable doubt of the prisoner's entire accountability for the crime charged, then they must give him the benefit of it and find him not guilty by reason of insanity.

*State vs. Reidell, 9 Houst. 480, 481, 483.*

*Third.* The existence of previous cases of insanity in the defendant's family, if proved to the satisfaction of the jury, must be considered by them in determining the question of the defendant's criminal capacity at the time the alleged act was committed.

*State vs. Windsor, 5 Harr., 512.*

LORE, C. J., charging the jury :

Gentlemen of the jury :—The prisoner, Montylaoo A. Cole, is charged in the indictment with murder of the first degree.

The indictment contains three counts. The first count charges that death resulted from a mortal wound inflicted on the left side of the head ; the second from such wound inflicted on the right side of the head ; the third from like wounds inflicted on both sides of the head. It is conceded that there is no evidence sustaining the second count, charging a mortal wound on the right side of the head, therefore the second count must be left out of your consideration. You have only to deal with the first and third counts.

Murder of the first degree consists in killing a human being

with express malice aforethought, or in perpetrating or attempting to perpetrate any crime punishable with death; that is to say in general, when it is committed with a sedate, deliberate mind and formed design to take life, or do some great or serious bodily injury. Such design may be shown from the circumstances attending the act; such as the deliberate selection and use of a deadly weapon, a preconcerted hostile meeting, privily lying in wait, a previous quarrel or grudge, antecedent menaces or threats, or in the preparation of means to effect such design or intent.

Murder of the second degree is where there was no such deliberately formed design to take life, or to perpetrate or attempt to perpetrate a crime punishable with death; but where nevertheless the killing was without justification or excuse, without any provocation or without sufficient provocation to rebut malice and reduce the homicide to manslaughter.

Manslaughter is the unlawful killing of a human being without malice.

Malice is the test of murder, and in a legal sense, is the dictate of a wicked, depraved or malignant heart, and of a disposition to do the evil act. It may be indicated by the use of a deadly weapon, the manner in which such weapon is used, the declaration of intent to kill, and by expressions and indications of grudge, malice and anger, and any and all other like circumstances surrounding the act.

It is elementary law that an act and an evil intent must combine to constitute a crime. Human laws do not deal with the intent, which rests only in the mind but waits for its manifestation in some act before it imposes its penalties.

It is well settled in law, as a rule of universal application, that every man is presumed to contemplate and intend the ordinary and natural consequences of his own acts; so that if a deadly weapon be used against the person of another, as it has a direct tendency to destroy life, the intention to take life is a necessary conclusion from the nature and character of the act itself.

*State vs. Pratt, 1 Houst. Crim. Cases, 263.*

The defense relied upon by the prisoner is insanity. That is, that the prisoner by reason of insanity was incapable of forming and executing a criminal intent. It is claimed that on the part of both father and mother, insanity existed in his family.

That at the time of the homicide, by reason of excess in studying for his examination, overtaxing his strength, and other causes, that he was so demented as not to be responsible for his actions. Upon this defense the prisoner has rested his case, and if it be true, it is a complete defense.

"Insanity may be either total or partial in its character, so also it may be total and permanent, or total but temporary in duration.

"A person totally and permanently insane is incapable of committing any crime whatever; because the will and judgment of a man, being overborne and obliterated by the malady, his act cannot, justly, be considered the voluntary act of a free agent, but rather the mere act of the body, without the consent of a directing or controlling mind. So in regard to total but temporary insanity, if it be such for the time being as to totally overwhelm the reason and conscience, the will and judgment, the accused cannot justly be held criminally responsible for his acts done during the continuance of such temporary insanity."

*State vs. Pratt, 1 Houst. Crim. Cases, 266.*

In order to exempt a person from responsibility for a criminal act, the controlling power of the insanity, whether arising from delusion or from real cause, must be so intense and overwhelming as utterly to deprive the party of his reason in regard to the act charged as criminal. The inquiry is always, in a case like this, narrowed down to this plain, sharp question, of the insanity of the person at the time, and in respect to the criminal act charged against him. Was he at the time, and as touching that act, sane or insane? The question is not, whether he was insane on any subject whatever, but whether he was insane with respect to the particular

act charged against him. If the person had sufficient capacity at the time to distinguish between the right and the wrong of that particular act; if he had sufficient capacity to know that that act was wrong and the power to choose whether he would do it or not—he is responsible for it, and for all its fatal consequences. For after all has been said that can be said in elucidation of the subject, we are compelled to return to the plain and simple question, whether the person, at the time he committed the act, had sufficient mental capacity to distinguish between right and wrong in respect to that act and the power to choose whether or not he would do the act; if he had, he is responsible.

We call your attention to two primary or cardinal rules or tests which are to govern you in reaching your conclusion upon insanity as a defense for crime, as authoritatively established in this State.

The first great rule is this,—every man is presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crime, until the contrary be proved to the satisfaction of the jury. This rule is fundamental and of universal application; it meets you at the very commencement of your inquiries and you must carry it with you in all your deliberations. You must, therefore, gentlemen, fully understand and remember, throughout all your investigations that the prisoner is to be considered by you to be a sane man and capable of committing crime until his insanity shall be satisfactorily established by the evidence. On this ground you must take your stand firmly and squarely, if you expect ever to arrive at a just and proper decision of this case.

The second great rule is; insanity being matter of defense, the burden of showing it lies on the prisoner. It must be proved as any other fact to the satisfaction of the jury. If the proof does not arise out of the evidence offered by the State, the prisoner must establish the fact of insanity by distinct evidence, and prove it to the satisfaction of the jury; otherwise the presumption of sanity

or soundness of mind will remain unrebutted and in full force. Exhibitions of mere eccentricity of mind, manner or conduct will not excuse him from the consequences of his criminal act. You should not confuse insanity with drunkenness, anger, wrath or revenge. The law requires more than this; the proof must establish the fact, that the prisoner at the time he committed the act of killing, was incapable of distinguishing between right and wrong, in respect to that fatal act, and was without the power to choose whether or not he would do the act.

If upon a calm review and consideration of all the evidence you have a reasonable doubt of the guilt of the prisoner such as honest, candid and intelligent minds might entertain, that doubt should enure to his benefit. It must, however, be such a doubt as honest, conscientious men, acting under the solemn obligations of their oaths, in full view of all the testimony, feel themselves constrained to entertain.

*State vs. Thomas, 1 Houst. Crim. Cases, 530; State vs. Manlove, Ibid, 217.*

Applying the law as the Court has just given it to you, to the evidence in this case, you must reach your conclusion.

If you should be satisfied from the evidence that the prisoner, at the time he gave the mortal wounds, was laboring under such a disease of the mind as to render him, for the time being, incapable of distinguishing between the right and the wrong of that act or without the power to choose whether or not he would do the act, you should acquit him on the ground of insanity, and should so return your verdict.

But if you are satisfied that he was then capable of so distinguishing, and had the power of so choosing, you may if the evidence shall so warrant, find the prisoner guilty of murder of the first degree, or of murder of the second degree or of manslaughter.

Verdict, guilty of manslaughter.