JOSE C. LONGORIA, Defendant Below, Appellant, v. STATE OF DELAWARE, Appellee.

312

(*March* 28, 1961.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Clement C. Wood*, Chief Deputy Attorney-General, and *Murray M. Schwartz*, Deputy Attorney-General, for the State.

*Courtney H. Cummings, Jr.*, and *Richard J. Baker* for defendant.

Supreme Court of the State of Delaware, No. 44, 1960.

BRAMHALL, J.:

Defendant in this appeal alleges error on the part of the trial judge in (1) refusing to permit defendant to waive the right of trial by jury after the State had objected, insisting upon a jury trial; (2) refusing to permit defendant to interrogate members of the jury relating to the mental illness of defendant; (3) refusing to charge the jury as requested by defendant in defining the crime of murder; (4) refusing to apply the Durham Rule in charging the jury on the defense of insanity; (5) error in explaining in charge the test of mental illness under the M'Naghten Rules; (6) defining a deadly weapon; (7) admitting in evidence bloodstained clothing of

deceased; (8) weight and sufficiency of evidence to sustain conviction of murder in the first degree.

Defendant, while sitting in the Warner Theatre, a motion picture theatre in the City of Wilmington, with his wife and four-year old child, stabbed the child in the chest nine times with a pocket knife, killing him instantly. The circumstances leading up to the killing, which were mostly undisputed, are substantially as follows:

Defendant and his wife had become estranged and were living separate and apart, the child being with the mother. Defendant telephoned his wife on the morning of the murder and asked to see his son. His wife refused to meet defendant. Defendant called the child to the telephone to ask him to persuade his mother to meet defendant. After some further discussion between defendant and his wife, it was agreed that they would meet at the Warner Theatre. Defendant was attempting to effect a reconciliation with his wife. In the theatre defendant and his wife engaged in a somewhat heated discussion, apparently with reference to the child. Defendant finally said, "If I can't have him, nobody else can." He then took his pocket knife and with it stabbed the child nine times in the chest, killing him instantly. Defendant immediately after the commission of the act admitted that he killed the child. When the police officers arrived, defendant appeared composed and requested one of the officers to identify himself.

At the trial, the only defense offered by defendant was that of insanity. The jury did not accept defendant's defense but convicted him of murder in the first degree. Defendant appeals.

Defendant during the trial and in this Court, raised numerous objections, as hereinbefore set forth, which we now consider.

1. Refusal of the trial judge to permit defendant to waive his right of trial by jury.

Defendant expressly waived his right to a jury trial. Rule 23(a) of the Rules of Criminal Procedure of the Superior Court *Del. C. Ann.*, provides that a criminal case shall be tried by a jury unless the defendant shall waive in writing his right to a jury trial, with the approval of the Court and the consent of the State. The State insisted that the case be tried by a jury, contending that there could be no effective waiver of the right of trial by a jury without the consent of the State. The State further alleged that under 11 *Del. C.* § 4701, it is provided that the defense of insanity must be determined by a jury impaneled on the trial. The trial judge agreed with the State's contention and overruled defendant's motion, ordering the case to be tried before a jury. Defendant contends that this was error.

The State raises the objection that defendant's motion was not in writing as provided by the rule. We overrule this objection, since it was not made in the court below and since the trial judge proceeded to dispose of defendant's motion on its merits.

Defendant contends that under Article I, Section 7, of the Constitution of this State, *Del. C. Ann.*, trial by jury is a personal right of defendant which he may waive or insist upon in his sole discretion. Defendant further alleges that the area of discretion given to the trial judge under Rule 23(a) of the Superior Court is limited solely to whether or not defendant made a competent waiver. He asserts that the refusal of the State to give its consent to, and the refusal of the trial judge to permit, a trial by the Court amounts to an arbitrary exercise of their privilege and would frustrate and nullify the sole purpose of the rule.

We think that the State was entitled to insist that the case be tried before a jury. Beginning with the case of *Patton v. United States*, 281 *U. S.* 276, 50 *S. Ct.* 253, 74 *L. Ed.* 854, there is a long line of cases in both the federal and

state courts upholding the right of the State or government to insist upon a trial by jury. See *Annotation in* 51 *A. L. R.* 2d 1346, *Accused—Right to Trial by Jury.* In addition, 11 *Del. C.* § 4701 provides:

"If upon the trial of any person upon any indictment or information in the Superior Court, the defense of insanity is made and established to the satisfaction of the jury impaneled on the trial, and the fact charged is proved, the jury shall return a verdict of "not guilty by reason of insanity."

▮ Rule 23(a) of the Rules of Criminal Procedure of the Superior Court specifically states that cases required to be tried by a jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the Court and the consent of the State. Contrary to defendant's contention, he has no constitutional right to be tried by the court. See *Patton v. United States, supra; State v. Mead,* 4 *Blackf., Ind.,* 309, 30 *Am. Dec.* 661; *Sammons v. State,* 53 *Ga. App.* 369, 185 *S. E.* 923. Both the State and the trial judge at the time of defendant's motion were aware of the fact that at least one of the defenses presented in this case would be the mental illness of defendant. Passing the troublesome questions of whether defendant was mentally competent to waive a jury trial and the effect to be given to the provisions of § 4701, we think that the State was fully justified under Rule 23(a) in refusing defendant's motion.

2. Refusal of trial judge to permit defendant to interrogate members of the jury relating to the mental illness of defendant.

Defendant submitted the following request for *voir dire* examination: "Have you formed or expressed an opinion that would exclude mental illness as a defense to this prosecution?" The trial judge refused to permit defendant to put this question to the jury, saying that it was covered generally by the previous questions put to the jury.

Defendant relies upon Rule 24 of the Rules of Criminal Procedure of the Superior Court, which provides that the Court may permit the defendant or his attorney to examine prospective jurors, or it may itself conduct the examination, in which event the Court shall permit defendant or his attorney and the Attorney General to supplement the examination by such further inquiry as it shall deem proper. Defendant contends that his question was reasonably calculated to ascertain if any prejudice might exist on the part of the jury and that the trial court's refusal to permit the question amounted to an abuse of discretion.

■■ There is no merit to this contention. The trial court at the beginning of the case interrogated the jury in the customary manner in this State by asking questions relating to "any formed or expressed opinion as to the guilt or innocence of the accused" and as to the existence in their minds of any prejudice or bias of any kind. In refusing defendant's requests, the trial court stated that these questions by implication sufficiently dealt with the subject matter raised in the question of defendant. The right of counsel to examine the jury upon the *voir dire* is a matter which lies largely within the discretion of the Court. There is no evidence of abuse of discretion or of prejudice here.

3. Refusal of the trial judge to give in his charge the definition of crime of murder requested by defendant.

Defendant requested the trial judge to charge the jury with respect to the common law definition of murder as follows:

"At the common law, murder was, and still is, defined to be when a person of sound memory and discretion unlawfully kills a human being with malice aforethought, either express or implied."

The trial judge refused defendant's request.

As we understand defendant's objection, it is that the trial judge omitted from his charge the words "sound memory and discretion". Defendant contends that a proper definition of the crime of murder must necessarily include this or similar language.

The charge given by the trial judge was, in substance, taken from the language of this Court in the case of *Bantum v. State*, 7 *Terry* 487, 85 *A*. 2d 741. Except perhaps by inference, the correctness of the language used in this charge is not challenged.

The definition of murder as contained in defendant's prayer is taken from the common law definition as found in *Blackstone's "Commentaries"*, 4 *Bl*. 195, which is, in substance, the definition given by Sir Edward Coke. This language was used by the courts of this State in defining the crime of murder until sometime after the passage of the statute dividing the crime of murder into murder in the first degree and murder in the second degree, 11 *Del. C.* §§ 571 and 572, being set forth in the *Code of* 1852 as §§ 2842 and 2843.

We think that the definition of murder as defined by the trial judge was correct. The fact that it did not contain the words "of sound memory and discretion" is not important. They are not necessarily included in a proper definition of murder. The language used by the trial judge is the language which has been followed in this state for many years. See *State v. De Paolo*, 3 *Boyce* 176, 84 *A*. 213; *State v. Stockley*, 3 *Boyce* 246, 82 *A*. 1078; *State v. Johnson*, 2 *Boyce* 49, 78 *A*. 605; *State v. Pepe*, 1 *Boyce* 232, 76 *A*. 367; *State v. Moore*, 1 *Boyce* 142, 74 *A*. 1112. Of course, a defendant may not be convicted of the charge of murder unless he is of sound mind, as construed by the courts of this state, which is what these words mean. This is true not only in a prosecution for murder, but in every criminal case.

4. Refusal of trial judge in his charge to the jury to follow the Durham Rule.

Defendant requested the trial judge to charge the jury that the question of mental illness was one of fact and that if at the time of the act defendant was suffering from mental illness or defect, this would be a complete defense. The trial judge declined defendant's prayer. Defendant contends that this was error.

A psychiatrist called on the behalf of defendant testified that the defendant suffered from a severe form of mental illness known as a paranoid state or condition, in which people have delusions or fixed false ideas, and that this condition had existed for some time prior to the commission of the act. He further stated that defendant was unable to control the impulse to destroy his child at that time. His testimony was corroborated, in part at least, by Dr. Tarumianz, the State psychiatrist, who related his opinion to the time of the commission of the act.

The trial judge charged the jury to the effect that if the defendant was mentally ill when he killed the child, he would not be responsible for what he did; that to exempt a person from responsibility for a crime, the mental illness must be of such a character as to deprive him of the capacity to distinguish between right and wrong in respect to the act committed or to deprive him of sufficient will power to choose whether he would do the act or refrain from doing it; that it was not necessary that the jury be satisfied as to the particular type of mental illness from which defendant might suffer.

This charge was similar to the charges given in other murder cases in this state for many years. *State v. Windsor*, 5 *Harr.* 512; *State v. Cole*, 2 *Penn.* 344, 45 *A.* 391; *State v. Kavanaugh*, 4 *Penn.* 131, 53 *A.* 335; *State v. Jack*, 4 *Penn.* 470, 58 *A.* 833. It is known as the "Right-and-Wrong" rule, or the M'Naghten Rule, which was formulated by the

English House of Lords in 1843 in the case of *Regina v. M'Naghten,* 10 *Cl. & Fin.* 200, 8 *Eng. Rep.* 718. Aside from the decisions in the State of New Hampshire and the federal courts in the District of Columbia, and occasional scattered opinions of courts of other states, it has been followed with varying degrees of approval in every other state in this country.

The prayer requested by defendant was, in substance, the test applied in the case of *State v. Pike,* 1870, 49 *N. H.* 399, and the case of *Durham v. United States,* 1954, 94 *U. S. App. D. C.* 238, 214 *F.* 2d 862, 45 *A. L. R.* 2d 1430. Under the rule enunciated in these cases, the Court abandoned the "Right-and-Wrong" rule; it rejected the Irresistible Impulse Test; it stated simply that the accused was not criminally responsible if his unlawful act was the product of mental illness or mental defect. Under this rule, a jury is permitted to decide whether or not the accused was suffering from mental disease—seemingly without the benefit of any adequate standard or formula as to when one is suffering from mental disease or mental defect.

Defendant contends that the "Right-and-Wrong"test is not an adequate test for determining the criminal responsibility of an accused and should not be followed. He urges this Court to adopt the test enunciated in the *Durham* case. In support of his contention, he cites a flood of literature on the issue of criminal responsibility, in which the M'Naghten Rule is severely, and sometimes caustically, criticized.

Parenthetically, in spite of this severe criticism on the part of psychiatrists and others, an examination of their writings shows that, while the great majority are in sharp disagreement with the M'Naghten Rule, they are also in considerable disagreement among themselves. See Wertham, *Psychoauthoritarianism and the Law,* 22 *U. Chi. L. Rev.* 336; Cavanaugh, *A Psychiatrist Looks at the Durham Decision,* 5 *Catholic U. L. Rev.* 25 *et seq.;* Moreland, *Mental Responsibility*

*and the Criminal Law—a Defense,* 45 *Ky. L. J.* 215 *et seq.;* Modlin, *The Position of the Psychiatrist in the Administration of the Criminal Law,* 4 *Kan. L. J.* 350 *et seq.;* Hall, *Psychiatry and Criminal Responsibility,* 65 *Yale L. J.* 761. Not all psychiatrists and writers on this subject agree by any means that the M'Naghten Rule should be rejected at this time.

In spite of such violent criticism of the M'Naghten Rule, somewhat surprisingly, the rule enunciated in the *Durham* case has not been followed by the highest court of any single state. In opinions delivered since the promulgation of the *Durham* opinion, it has been specifically repudiated in at least nineteen states and in three federal circuits. *Downs v. Arkansas, Ark.,* 330 *S. W.* 2d 281; *People v. Nash,* 52 *Cal.* 2d 36, 338 *P.* 2d 416; *People v. Ryan,* 140 *Cal. App.* 2d 412, 295 *P.* 2d 496; *Castro v. People,* 140 *Colo.* 493, 346 *P.* 2d 1020; *Early v. People, Colo.,* 352 *P.* 2d 112; *State v. Davies,* 146 *Conn.* 137, 148 *A.* 2d 251; *State v. Taborsky,* 147 *Conn.* 194, 158 *A.* 2d 239; *Piccott v. State of Florida, Fla.,* 116 *So.* 2d 626; *People v. Carpenter,* 11 *Ill.* 2d 60, 142 *N. E.* 2d 11; *Flowers v. State,* 236 *Ind.* 151, 139 *N. E.* 2d 185; *State v. Andrews,* 187 *Kan.* 458, 357 *P.* 2d 739; *Cole v. State,* 212 *Md.* 55, 128 *A.* 2d 437; *Commonwealth v. Chester,* 337 *Mass.* 702, 150 *N. E.* 2d 914; *State v. Finn,* 257 *Minn.* 138, 100 *N. W.* 2d 508; *State v. Goza, Mo.,* 317 *S. W.* 2d 609; *State v. Kitchens,* 129 *Mont.* 331, 286 *P.* 2d 1079; *Sollars v. State,* 73 *Nev.* 248, 316 *P.* 2d 917; *State v. Lucas,* 30 *N. J.* 37, 152 *A.* 2d 50; *State v. White,* 27 *N. J.* 158, 142 *A.* 2d 65; *State v. Robinson, Ohio App.,* 168 *N. E.* 2d 328; *Commonwealth v. Woodhouse,* 401 *Pa.* 242, 164 *A.* 2d 98; *State v. Goyet,* 120 *Vt.* 12, 132 *A.* 2d 623; *State v. Collins,* 50 *Wash.* 2d 740, 314 *P.* 2d 660; *Kwosek v. State,* 8 *Wis.* 2d 640, 100 *N. W.* 2d 339; *Howard v. United States,* 5 *Cir.,* 232 *F.* 2d 274; *Voss v. United States,* 8 *Cir.,* 259 *F.* 2d 699; *Anderson v. United States,* 9 *Cir.,* 237 *F.* 2d 118; *Sauer v. United States,* 9 *Cir.,* 241 *F.* 2d 640, certiorari denied 354 *U. S.* 940, 77 *S. Ct.* 1405, 1 *L. Ed.* 2d 1539.

The ultimate effect of the rule first laid down in *Pike,* and followed considerably later in *Durham,* is difficult to assess. Judge Learned Hand, in commenting upon the *Durham* case in a letter to the editor of the *University of Chicago Law Review,* said:

"I have read the opinion that you mention, and perhaps it is all that can be said; but, frankly, it did not seem to me to give us any guidance that perceptibly would help.

"The truth appears to me to be that the question goes to the heart of whatever we choose to make our purpose in criminal punishment. It is only indirectly, or at second hand, a psychiatric question."

In addition, various problems have arisen in the application of this test in the trial courts. One effect has been to reduce the role of the trial judge and increase the role of the jury and the expert witness. As yet, it is not entirely clear that the difficulties which have arisen because of the apparent lack of standards in determining what is mental illness and mental defect have been satisfactorily "worked out". It is therefore impossible, we think, to determine at this time what the final result of the effect of this rule in the trial of murder cases will be. It is conceivable that the adoption of too broad a standard might result in holding that any person who commits a crime is suffering from mental illness and therefore not guilty. Such a result would be disastrous to our society, which it is the purpose of the law to protect. Until there has been further progress in this respect, we feel that it is better, and safer for society, to follow the road we know, even though it may have many bumps and turns, rather than follow a seemingly more modern road, the destination of which is at present uncertain.

█ The trial judge in refusing to adopt the Durham Rule committed no error.

5. Trial judge's explanation of test of mental illness under the M'Naghten Rule.

Defendant contends that the failure of the trial judge to charge the jury that defendant must be acquitted, if, because of disease, he was unable to know the nature and quality of the act which he committed was error. In making this argument defendant explicitly stated that he was by no means abandoning his contention that the Court should not apply the M'Naghten Rule, as amended by the Irresistible Impulse Rule recognized in this state, but should apply the Durham Rule instead.

As we understand the force of defendant's argument, it is based upon the failure of the trial judge to use the words "nature and quality of the act" since, otherwise, there is no substantial difference between the charge given by the trial judge and that contained in defendant's prayer.

The Court charged the jury under the M'Naghten Rule, supplemented by the Irresistible Impulse Rule, that if they should find that the defendant was mentally ill at the time of the occurrence, could not distinguish between right and wrong, or, if his mental illness was such as to deprive him of sufficient will power to choose whether he would do the act or refrain from doing it, this would constitute a complete defense. This charge is substantially the same as given in all Delaware cases where the defense of insanity is made.

It is true that in one or two of the earlier cases the language referred to by defendant was used. We do not think that this is important. In the first place, the language used by the trial judge is inclusive of the language requested in defendant's prayer. If defendant could not distinguish between right and wrong, or if his mental illness deprived him of sufficient will power to choose, he obviously could not know or understand, in a legal sense, the nature and quality of the act. In the second place, even in those cases where this

language was used, courts have stated that in the final analysis "* * * we are compelled to return to the plain and simple question of whether the prisoner, at the time he committed the act, had sufficient mental capacity to distinguish between right and wrong in respect to that act". *State v. Pratt*, 1 *Houst. Cr. Cas.* 249, 268; *State v. Jack*, 4 *Penn.* 470, 58 *A.* 833; *State v. Cole*, 2 *Penn.* 344, 45 *A.* 391; *State v. Reidell*, 9 *Houst.* 470, 14 *A.* 550.

■ The failure of the trial judge to charge the jury in accordance with defendant's prayer did not constitute error.

6. Is a penknife a deadly weapon?

The trial judge in defining murder in the second degree charged the jury that the intentional use of a deadly weapon upon the body of another without sufficient cause or provocation may be sufficient to warrant the inference of malice. Later, in defining the crime of manslaughter, the trial judge charged the jury that in order to reduce the crime from murder to manslaughter, where a dangerous or deadly weapon is used, the provocation must be great indeed. Defendant contends that the trial judge in referring to the penknife in this manner, in substance, instructed the jury that the penknife was a deadly weapon *per se*. He also stated that this was an issue of fact to be decided by the jury.

■ An examination of the charge is helpful. The trial judge in defining murder in the second degree cited as an example the use of a deadly weapon as sufficient to warrant the inference of malice. In the same manner, in defining murder in the first degree, he referred to lying in wait, antecedent threats, proof of hatred, ill will, spite or jealousy, or plans or schemes to do the deceased great bodily harm, as examples of express malice aforethought. In discussing the absence of malice in his charge on manslaughter, he cited as an example a sudden fight in the heat of passion, without time for reflection, as showing a lack of malice. Clearly all of these 'examples' were solely for the purpose of giving the

jury concrete illustrations of the somewhat abstract definitions previously given. In neither instance did the trial judge in any manner attempt to take away from the jury the question of determining the different questions involved, including that of whether a penknife is a deadly weapon.

A deadly weapon in the case of a homicide where malice is presumed is such a weapon as is likely to produce death when used by one person against another. *State v. Miele*, 1 *Boyce* 33, 74 *A.* 8; *State v. Johns*, 6 *Penn.* 174, 65 *A.* 763; *Wisniewski v. State*, 1 *Storey* 84, 138 *A.* 2d 333. The manner in which a weapon is used may be considered in determining whether the weapon is a deadly weapon likely to produce death or great bodily injury. *State v. Cox*, 128 *N. J. L.* 108, 23 *A.* 2d 555. It has been held that a pocket knife used to inflict chest and abdominal injuries was a deadly weapon. *People v. Walker*, 99 *Cal. App.* 2d 238, 221 *P.* 2d 287. In this case we have no difficulty in agreeing with the finding of the jury that an ordinary pocket knife used to stab a four-year old child in the chest nine times was a deadly weapon.

7. Introduction into evidence of clothing of deceased.

The State introduced into evidence certain clothing of the deceased. Defendant objected to the admission on the ground that the killing was not in dispute and that its introduction in evidence would tend to inflame and prejudice the minds of the jury.

Clothing worn by the victim at the time of his decease is generally admissible in evidence as tending to shed light upon some material inquiry in the case which is controverted or in doubt. See 2 *Wharton's Criminal Evidence*, Eleventh Edition, § 756. Defendant contends that his confession of the killing eliminates any controversy which would warrant the admission of this evidence. We do not agree. Such an admission does not relieve the State from proving

the degree of murder for which defendant might be responsible. It would not relieve the State from the necessity of corroborating the confession of defendant. It has frequently been held that the number, size and location of the cuts all have some relevancy in corroborating a confession on the part of the defendant and in determining the degree of the crime. See cases cited in 68 *A. L. R.* 2d 903. Admissibility, in homicide prosecution, of deceased's clothing worn at the time of killing.

We find nothing in the record showing that this clothing was used to inflame the minds of the jury or that any improper use of them was made by the State for the purpose of arousing their passions or prejudices.

Under the circumstances, we think that the clothing was properly admitted.

8. Sufficiency of the evidence to support verdict of murder in the first degree.

Defendant alleges that the evidence necessary to support a verdict of murder in the first degree is insufficient. He gives several reasons for this statement, to which we shall advert.

Defendant states that under the common law murder is defined as an act committed by a person of sound memory and discretion. 4 *Blackstone's "Commentaries"* 195. Noting that the presumption of malice is only that of implied malice and that express malice must be proved by external circumstances, defendant states that there is no proof of a sedate and deliberate mind and formed design to kill. He also states that the State produced no evidence to show motive. He contends that the testimony of the two psychiatrists favored defendant and that there was no lay testimony showing defendant's state of mind. He also contends that the law in this State requires defendant to establish mental illness to the

satisfaction of the jury only for the purpose of rebutting the State's presumption of sanity.

Preliminarily, we consider the charge of the trial judge as to the mental responsibility of defendant. The trial judge charged the jury as follows:

"Every man is presumed to be sane when he comes before the Court, and the burden of showing mental illness as to a particular defendant is upon the defendant. But once the defendant presents proof of mental illness then the burden of proving the defendant's sanity shifts back to the State." The State took exception to this charge on the ground that the trial judge was departing from the well-established rule in this State to the effect that the burden was upon defendant to establish mental illness to the satisfaction of the jury.

We are of the opinion that the trial judge in charging the jury as he did was in error. In effect, he was placing upon the State the burden of proving the defendant sane. Because of the importance of this question, we think that the charge of the trial judge should be reviewed here even though the error was beneficial to defendant and could not have been prejudicial to him.

There is, of course, a presumption that the defendant knew the consequences of his act and was sane at the time of its commission. As we stated recently in the case of *Ruffin v. State*, 11 *Terry* 83, 123 *A*. 2d 461, the burden is upon the defendant to prove the contrary. It must be proved as a fact to the satisfaction of the jury. The statute above quoted expressly so provides. 11 *Del. C.* § 4701. And it is unnecessary, and indeed inconsistent, to charge that if at the end of the whole case there is reasonable doubt under all the evidence, including insanity, the defendant must be acquitted. This point was considered and decided in *Quillen v. State*, 10 *Terry* 114, 110 *A*. 2d 445, 449-452.

Defendant alleges lack of proof of express malice. He states that the testimony of both psychiatrists at the trial support defendant's contention of mental illness at the time of the act—the only difference between their testimony being that Dr. Tarumianz stated that the psychotic episode was temporary—and that there was no lay testimony offered to refute their testimony.

Express malice, as that term is used in defining the crime of murder, indicates a sedate, deliberate mind and a formed design to kill, evidenced by circumstances other than the mere fact of the killing. *Bantum v. State, supra.* In this case, it must be conceded that malice was present, since no legal justification or provocation was shown. The formed design to kill or to do great bodily harm was inferable from the intentional use of a deadly weapon. *Bantum v. State, supra.* Proof of a sedate and deliberate mind is shown by external circumstances such as lying in wait, ill will, spite or jealousy, or by plans or schemes to do great bodily harm, or any other circumstances which disclose the purpose or intention of the accused toward his victim at the time the crime was committed. *State v. Russo,* 1 *Boyce* 538, 77 *A.* 743. As this Court said in the *Bantum* case, "The rapidity of the action of the mind is not susceptible of measurement, and the existence of the sedate and deliberate mind as a necessary element of first degree murder is peculiarly a question for the jury." [7 *Terry* 487, 85 *A.* 2d 747].

We think that the evidence in this case was sufficient to warrant a jury in finding that the murder was committed by defendant with a sedate and deliberate mind.

The question of defendant's sanity was for the jury to decide. Assuming there was no direct evidence contradicting the testimony of the two psychiatrists, the jury was not bound to accept their testimony; they could "accept it, reject it, or give it whatever weight they saw fit". *Dashiell*

*v. State, Del.*, 154 *A.* 2d 688, 690. We cannot say as a matter of law from the evidence presented that there was not sufficient evidence to warrant the jury in finding a verdict of murder in the first degree.

The judgment of the Superior Court will be affirmed.