Frederick FETTERS, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted Aug. 19, 1981.

Decided Oct. 5, 1981.

Raymond J. Hancock (argued), and Marsha Kramarck, Asst. Public Defenders, Wilmington, for defendant below, appellant.

Fred S. Silverman (argued), Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., McNEILLY and HORSEY, JJ.

McNEILLY, Justice:

Defendant, Frederick Fetters, appeals from his Superior Court jury conviction of Murder in the Second Degree, contending that the Trial Court committed reversible error in failing to instruct the jury on the law of self-defense, by denying his request for a non-jury trial, and by refusing to admit the testimony of defendant's expert witness on the results of a sodium amytal test administered to defendant.

I

On July 4, 1978 police arrived at the home of the victim and father of the defendant to find the victim lying in the living room badly injured. To the officer's inquiry as to the source of the victim's injuries, the victim initially responded that he had fallen down the stairs. Questioned again, the victim stated that it was his son who had injured him. An arrest warrant was issued for the defendant. The victim died from his injuries several days later.

Early in the morning of July 5, the defendant, a Vietnam veteran with a history of mental illness, was detained at a Maryland service station by a police officer after the defendant had requested the officer to take him to a Veteran's Administration hospital. The officer noticed that the defendant's hands were swollen and scratched, and asked the defendant about the condition of his hands. Defendant replied that he had been in a fight with his father. The police officer summoned an ambulance. When the ambulance arrived the defendant, in response to inquiries from the ambulance crew about his injuries, repeated that he had been in a fight with his father and stated: "I think I might have killed him." A check with the New Castle County police revealed that there was a warrant outstanding for defendant's arrest and he was turned over to Delaware police.

II

Defendant's contention that the Trial Court committed reversible error in failing to instruct the jury on the law of self-defense is governed by 11 *Del.C.* § 303. Section 303 provides:

(a) No defense defined by this Criminal Code or by any other statute may be considered by the jury unless the court is satisfied that some credible evidence supporting the defense has been presented.

(b) Evidence supports a defense when it tends to establish the existence of each element of the defense.

(c) If some credible evidence supporting a defense is presented, the defendant is entitled to a jury instruction that the jury must acquit him if they find that the evidence raises a reasonable doubt as to the defendant's guilt.

Under this provision, then, defendant is entitled to a jury instruction on self-defense only if there is evidence sufficient to establish each element of that defense. The victim in this case died as a result of the beating administered by the defendant. Accordingly, defendant was required to prove by credible evidence the existence of each element of 11 *Del.C.* § 464(c) relating to the use of deadly force in self-defense. Section 464(c) permits the defendant to use deadly force only if he "believes that such force is necessary to protect himself against death [or] serious physical injury . . . ."

Defendant suggests that the Trial Court record is replete with credible evidence es-

tablishing justifiable self-defense with deadly force. The record indicates that defendant had a poor personal relationship with the victim. Defendant relies on the expert testimony of a psychologist who stated that defendant perceived the victim as "abusive, domineering, restrictive, [and] punitive towards him." Expert testimony revealed that, just before the incident, defendant claimed to have had hallucinations in which he heard his father say "filthy things" about him. In addition, defendant claimed that his father tried to eject him from the house on the night of the incident. Finally, defendant relies on the testimony of a medical expert who acknowledged seeing a police report in which defendant said that the victim "threatened to cut his guts out."

■ Defendant would have the Court believe that this evidence supported a finding of justifiable self-defense and required the Trial Judge to instruct the jury on self-defense. However, defendant offered no evidence to show that the victim was the initial aggressor. Defendant also failed to introduce any evidence to establish the quantum of force, if any, used against him by the victim. Defendant presented no evidence on the question of whether he believed that deadly force was necessary to protect himself from the victim. In short, defendant failed to establish by credible evidence each element of self-defense by deadly force set forth in section 464(c), supra. Since defendant failed to meet the requirements of section 303, supra, the Trial Judge properly refused to instruct the jury on the law of self-defense.

## III

Defendant asserts, as a second point of appeal, that the Trial Judge erred in denying his request for a non-jury trial. In the instant case, the State successfully contested the defendant's motion for a non-jury trial. The Trial Judge announced that it was "the Court's custom not to go along with the waiver of a jury in cases of this type."

■ Under Superior Court Criminal Rule 23(a), "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the Court and the consent of the State." Rule 23(a) is in accord with weighty precedent upholding the State's right to insist on a jury trial and the trial court's discretion in accepting or refusing to accept a defendant's waiver of his right to trial by jury. In *Patton v. United States*, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), the United States Supreme Court declared that

"Trial by jury is the normal and ... preferable mode of disposing of issues of fact in criminal cases ... [T]he maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departure from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity."

*Id.* at 312, 50 S.Ct. at 263. In *Singer v. United States*, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965), the Supreme Court reaffirmed its stance in *Patton*, stating that

[t]he question remains whether the effectiveness of this waiver can be conditioned upon the consent of the prosecuting attorney and the trial judge.

The ability to waive a constitutional right [to a jury trial] does not ordinarily carry with it the right to insist upon the opposite of that right.

*Id.* at 34–35, 85 S.Ct. at 790. We adopted this language in *Young v. State*, Del.Supr. 407 A.2d 517, 519 (1979). See also *Longoria v. State*, Del.Supr., 3 Storey 311, 168 A.2d 695, 697–98 (1961). Under the clear weight

of authority, the State was warranted in insisting upon a jury trial and the Trial Court correctly exercised its discretion in refusing to accept defendant's waiver of a jury trial.

Defendant further asserts that the State's insistence on a jury trial was prompted by an improper motive. Specifically, the defendant avers that the State sought a jury trial rather than a non-jury trial because it believed that a jury would be more likely to convict than the Trial Court sitting alone. Defendant characterizes the State's conduct as harassment in violation of DR 7–102[A][1] of the Delaware Code of Professional Responsibility and, in essence, alleges that such conduct was prejudicial to his request under Rule 23(a) for a non-jury trial and, therefore, grounds for reversal of his conviction.* We reject this contention.

The State admits that it was concerned that defendant probably would have been released from the Delaware State Hospital had the Court sitting alone found him not guilty by reason of insanity. This reason alone, however, neither prejudices the defendant nor supports a charge of prosecutorial misconduct. The possibility that defendant could be found not guilty by reason of insanity and released from the Delaware State Hospital exists equally in a jury trial and a non-jury trial. As we have noted above, the State may properly insist upon a jury trial. See *Patton; Singer; Young*; and *Longoria*, supra. In the instant case, then, there was no misconduct on the part of the State in exercising its right to prosecute the defendant before a jury and, thus, no prejudice to defendant.

In view of defendant's assertion that the State prosecutor violated a provision of the Delaware Code of Professional Responsibility, we find it necessary to comment briefly on the allegation of such violations. Prosecutorial misconduct, if sufficiently prejudicial to a defendant, has traditionally been a ground for reversal of a defendant's conviction. A defendant, who is harmed by a State prosecutor's misconduct, need only object to it at trial in order to preserve the issue on appeal. In this way, a defendant can safeguard his right to a fair trial. This right may also be safeguarded if there is plain error. In the absence of an objection or plain error in the instant case, there is no place in this appellate review for an allegation that a provision of the Code of Professional Responsibility has been violated. In such a situation, assertions of professional misconduct rising to the level of a violation of the Constitution and laws of this State or the United Sates have their proper setting, initially, in a post-conviction proceeding under Superior Court Criminal Rule 35 ** or in a complaint to the Censor Committee of this Court.

Defendant next contends that, because he was subjected to a jury trial, his defense of insanity did not receive fair consideration from the jurors, whom, he claims, did not understand the expert testimony relating to that defense. Through a lengthy statistical analysis, defendant seeks to establish that the expert testimony contained complex terminology which was too difficult for the jurors to comprehend and evaluate. We are not persuaded, however, that the jury could not understand the expert testimony presented below. As the State correctly argues, the issue of insanity is a basic question of fact. Resolution of factual questions has long been recognized as particularly within the province of the jury. See *Patton*, supra. "[T]he mere fact that a case is complicated and might not be

---

* DR7–102(A)(1) provides, in pertinent part:

   (a) In his representation of a client, a lawyer shall not:

      (1) ... assert a position ... on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

** Superior Court Criminal Rule 35(a) provides in pertinent part: "Any person who has been sentenced by the Court may apply by motion for postconviction relief for any meritorious claim challenging the judgment of conviction including claims: (i) That the conviction was obtained or sentence imposed in violation of the Constitution and laws of this State or the United States."

correctly understood by a jury is not, in and of itself, sufficient reason to circumvent a jury trial." *United States v. Panteleakis,* D.R.I., 422 F.Supp. 247, 249 (1976) (citations omitted). While some of the terminology utilized by the expert witnesses may have been sophisticated, the jury was required to deal with only a few basic issues. We believe that the jury possessed the intelligence and comprehension necessary to reach a valid decision.

## IV

 Defendant's final contention centers on the admissibility of the results of a psychiatric examination of the defendant who had been placed under the influence of sodium amytal. At trial the Court interrupted defendant's expert witness as he began to testify about the interview, stating: "The results of a sodium amytal examination are not generally admissible, so I must ask the defense attorney not to go into that."

The test on appeal of evidentiary rulings is whether the Trial Judge abused his discretion, *Eaton v. State,* Del.Supr., 394 A.2d 217, 219 (1978). We conclude that the Trial Judge did not abuse his discretion in refusing to admit the testimony of defendant's witness regarding the sodium amytal test. The results of sodium amytal tests are generally inadmissible since they have not yet attained scientific acceptance as reliable and accurate means of discovering truth or deception. See, e. g., *Cain v. State,* Tex.Cr.App., 549 S.W.2d 707, 712 (1977); *People v. Johnson,* Cal.App., 32 Cal.App.3d 988, 109 Cal.Rptr. 118 (1973); *State v. Linn,* Idaho Supr., 93 Idaho 430, 462 P.2d 729 (1969).

Accordingly, we AFFIRM.

