**Maurice POLK, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Sept. 6, 1989.
Decided: Dec. 18, 1989.

Karl Haller (argued) and Howard W. Hudson, Jr., Asst. Public Defenders, Office of the Public Defender, Georgetown, for appellant.

M. Jane Brady (argued), Deputy Atty. Gen., Dept. of Justice, Georgetown, for appellee.

Before CHRISTIE, C.J., WALSH and HOLLAND, JJ.

WALSH, Justice:

The defendant, Maurice Polk ("Polk"), was charged by indictment with Robbery in the First Degree, Possession of a Deadly Weapon During the Commission of a Felony (five counts), Murder in the First Degree (two counts) and Attempted Murder in the First Degree (two counts). He was convicted of all charges following a jury trial in the Superior Court in Sussex County. Although the State sought the death penalty, the jury was unable to reach unanimous agreement as to that punishment. On December 2, 1988, Polk was sentenced to life imprisonment without parole on each of the Murder charges, life imprisonment without parole on each of the Attempted Murder charges and thirty years of imprisonment on each of the remaining charges.

In this appeal, Polk contends that the trial court erred in three respects: excluding from evidence defense testimony regarding involuntary intoxication; refusing to caution the jury that Polk had a health condition that caused him to be sleepy and inattentive; and refusing to grant a bench trial as requested by the defendant. Finding no reversible error in the proceedings below, we affirm the conviction.

I

On December 3, 1987, a man entered the De–Lux Dairy Market in Concord, Delaware. This individual, later identified as Polk, pointed a gun at Dorothy Hitchens, who was working behind the cash register, and demanded money. Hitchens gave Polk a bank bag containing money and lottery tickets. Polk, upon receiving the bag, shot Hitchens in the head. Hitchens died as a result of the wound. Polk then proceeded to search for the other two employees working in the store, Sandra Marsey and Wanda Cooper, who had attempted to hide. He shot both employees in the head although both individuals survived the shootings.

That night, during a brief interview at Nanticoke Hospital, Cooper told Detective Warrington ("Warrington") of the Delaware State Police that she did not know her assailant's name, but that he often came into the store to purchase red Twizzler licorice. She also told Warrington that other clerks working at the store might be able to identify the man on the basis of his frequent purchases of red Twizzler licorice. The next morning, Warrington interviewed Deborah Collins and Elaine Ford, both employees of the store. They said that they would be able to identify the man who often came in and bought red Twizzler licorice, but that they did not know his name. Subsequently, after viewing several thousand photographs, Collins identified a photograph of Polk as that of "the red Twizzler buyer." Collins also gave a detailed description of the red Twizzler buyer's car, a description that matched Polk's car. Warrington then contacted an ex-clerk of De–Lux Dairy, Tammy Warfle. Warfle stated that she knew the red Twizzler buyer, that his last name was Polk and that he had a brother in the Army. While in the hospital, Marsey and Cooper identified Polk's photograph from a photographic lineup shown them by Warrington. Both Marsey and Cooper made in-court identifications of Polk as their assailant.

## II

Prior to trial, the State filed a motion *in limine* to preclude the defense from offering evidence of intoxication. Polk contends that the trial court's ruling erroneously precluded expert evidence and restricted lay testimony on the defense of involuntary intoxication. The defense planned to offer evidence, including expert testimony, to support two different theories of involuntary intoxication.[1] First, the defense hoped to show that Polk was so addicted to crack cocaine that his use of the substance was not voluntary. Second, the defense hoped to show the cocaine Polk was using may have contained impurities of which he was unaware. The defense then planned to allege that the ingestion of these substances resulted in Polk's bizarre behavior and that the "nonwillful" consumption of these contaminants constituted involuntary intoxication.

■ The trial judge correctly ruled that addiction to an intoxicating substance does not make the consumption of that substance involuntary. *Voluntary* intoxication is defined as "intoxication caused by substances which the actor knowingly introduces into his body, the tendency of which to cause intoxication he knows or should know, unless he introduces them pursuant to medical advice or under such duress as would afford a defense to a prosecution for a criminal offense." 11 *Del.C.* § 424(2). It is obvious that Polk's use of cocaine was voluntary within the meaning of the statute and that as a matter of law, Polk was voluntarily intoxicated on cocaine on the night in question. *See Gray v. State*, Del.Supr., 441 A.2d 209, 224–25 (1982) (consumption of alcohol by alcoholic not involuntary).[2] Voluntary in-

toxication is not a defense to a criminal charge. 11 *Del.C.* § 421. *See also Wyant v. State*, Del.Supr., 519 A.2d 649 (1986). Thus, expert testimony that addiction made Polk unable to control his consumption of cocaine was irrelevant. The trial judge correctly ruled that Polk could testify to the fact that he was using drugs and to his mental state at the time in question, but that expert evidence on this issue was inadmissible. *See Gray*, 441 A.2d at 224–25.

■ The second theory of involuntary intoxication posited by the defense was that an "unknown" contaminant in the cocaine consumed by Polk caused his bizarre behavior. Proof of contamination was to consist of expert testimony that street drugs in Delaware have a relatively high incidence of adulteration and impurity. The offer of proof also included Polk's testimony, and possible corroborating testimony of another witness, that the cocaine consumed on the night in question caused Polk to behave in a different manner than he had when he had consumed cocaine on other occasions. The trial judge ruled that such evidence was "too obscure" without blood tests of Polk or analysis of the cocaine consumed by him on the night in question indicating that the cocaine in question had been adulterated.

Under 11 *Del.C.* § 303(a), "no [statutory] defense ... may be considered by the jury unless the court is satisfied that some credible evidence supporting the defense has been presented." *Id.* "Evidence supports a defense when it tends to establish the existence of each element of the defense." 11 *Del.C.* § 303(b). Here the trial judge correctly ruled that the proffered evidence was clearly insufficient to support a defense of involuntary intoxication. Polk

---

1. Under 11 *Del.C.* § 423, the defense of involuntary intoxication is available if, as a result of such intoxication:

    the actor at the time of his conduct lacked substantial capacity to appreciate the wrongfulness of his conduct or to perform a material element of the offense, or lacked sufficient willpower to choose whether he would do the act or refrain from doing it.

2. Several other jurisdictions have held that addiction to an intoxicating substance by a defen-

dant does not make that defendant's consumption "involuntary." *See, e.g., Evans v. State*, Alaska Supr., 645 P.2d 155 (1982) (all intoxication is to be regarded as voluntary unless it is unknowingly or externally compelled); *Tacorante v. People*, Colo.Supr., 624 P.2d 1324 (1981) (mere addiction is not sufficient to render the injection of heroin involuntary or unknowing); *Ford v. State*, 164 Ga.App. 620, 298 S.E.2d 327 (1982) (alcoholism is not involuntary intoxication).

could provide no evidence that the drugs he consumed contained any impurities, what the impurities may have been, and how they would affect any individual user, or Polk in particular. The admission into evidence of the fact that Delaware street drugs have a relatively high incidence of adulteration had little, if any, probative value on the issue of whether the drugs consumed by Polk were in fact contaminated by a substance that rendered Polk involuntarily intoxicated within the meaning of 11 *Del.C.* § 423.

## III

Polk suffered from a kidney condition that required frequent dialysis treatment. Because of the nature of this treatment and the scheduling necessary to accommodate the trial, Polk was required to arise early and often went to sleep late at night. During trial, defendant suffered from physical problems, and on one occasion he vomited in the morning before arriving at the court house. In addition, defendant took several medications because of his health condition. Apparently as a result of these factors, Polk was drowsy during the trial and even briefly fell asleep on one occasion.

Defense counsel requested an instruction informing the jury of the nature and extent of Polk's medical problems. Counsel feared that without such an instruction, the jury might become annoyed at the adjusted trial schedule or might conclude that Polk's inattentiveness and drowsiness were due to his indifference to the proceedings. Early in the trial the trial judge advised the jury that delays and early recesses several days a week would be necessary because of a medical condition suffered by Polk. However, the court refused to give any further instruction on this matter.[3] On one occasion, Polk fell asleep during trial. The court, at defense counsel's prompting, called a short recess but denied defense counsel's request that the jury be instruct-

ed that Polk's medical condition caused his drowsiness and should not be considered in their deliberations. The court felt that it was doubtful whether anyone noticed that Polk had fallen asleep and that to call attention to the fact would cause more harm than good. The judge added that if Polk continued to fall asleep during trial he would give appropriate instructions. Apparently Polk remained awake for the duration of the trial and no further instruction was given.

Defendant's argument that the trial judge erred in not giving the requested instruction fails because the demeanor of Polk, who did not testify, was irrelevant. *See Hughes v. State*, Del.Supr., 437 A.2d 559, 572 (1981). Further, the court did give limited instructions to the jury on Polk's medical condition and the effect that his condition would have on the trial schedule. The scope of this comment was fair and appropriate and the court below did not commit error by declining to elaborate on the nature of Polk's condition. Requests for jury instructions regarding untoward events that occur during trial are addressed to the discretion of the trial judge, who occupies a unique vantage and is best able to determine the effect upon the jury of specific events. *See Smith v. State*, Del.Supr., 317 A.2d 20, 23 (1974); *Miller v. State*, Del.Supr., 224 A.2d 592, 595 (1966) (conduct of trial committed to discretion of trial judge). We find no abuse of discretion in the trial judge's handling of the problem associated with Polk's medical condition.

## IV

Polk also contends that the trial judge improperly denied his request for a bench trial before the State announced its position on the motion. The defense motion for a trial by court was predicated on a statistical study,[4] the accuracy of which was never verified. The study showed that in the

---

**3.** It should be noted that the trial judge did keep himself informed on the status of Polk's health and even interceded on his behalf with the Department of Corrections by ordering the Department to provide Polk with a physician.

**4.** The study, compiled by the Sussex County Public Defenders Office, was known as the Homicide Definition Project.

fifteen first-degree murder cases tried by jury in Sussex County since 1970, there was only one acquittal, a percentage well below the acquittal rate in homicide bench trials. It was also contended that this acquittal rate was substantially below the acquittal rate for other offenses. The State asked for time to consider the motion for a bench trial but the court immediately denied it, stating that the "very elaborate protections" inherent in the jury system, which require unanimity of twelve jurors for a finding of guilt and the same unanimity for the imposition of the death penalty, would better protect the defendant's right than would a bench trial. Polk contends that the trial court committed reversible error in denying its request in the face of the statistics presented and the prosecution's lack of objection to the waiver request. We do not agree.

■ The right to trial by jury is guaranteed to criminal defendants by the United States Constitution, and this guarantee of a jury trial applies to state proceedings through the Fourteenth Amendment. *Duncan v. State of Louisiana,* 391 U.S. 145, 148–54, 88 S.Ct. 1444, 1446–50, 20 L.Ed.2d 491 (1968). The Delaware Constitution also recognizes the right to "a speedy and public trial by an impartial jury." Del.Const. art. I, § 7. This right applies to all serious criminal offenses. There is, however, no constitutionally guaranteed right to waiver of jury trial. The United States Supreme Court has held that "[t]he ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right." *Singer v. United States,* 380 U.S. 24, 34–35, 85 S.Ct. 783, 789–790, 13 L.Ed.2d 630 (1965). In *Patton v. United States,* 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), the Court stated that " '[i]n every substantial sense our constitutional provisions in respect to jury trials in criminal cases are for the protection of the interests of the accused, and as such they may, in a limited and guarded measure, be waived by the party sought to be benefitted.' " *Id.* at

296, 50 S.Ct. at 257. The Court recognized that allowing a criminal defendant unbridled discretion to waive a jury trial was not constitutionally required or necessarily preferable. In concluding its analysis, the Court stated:

> the maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the Court must be had, in addition to the express and intelligent consent of the defendant.

*Id.* at 312, 50 S.Ct. at 263. The common law requirements enunciated in *Patton* with respect to waiver of jury trials were incorporated into Federal Rule of Criminal Procedure 23(a). *Singer* held that Rule 23(a) was constitutionally valid.

Delaware also recognizes the circumscribed ability of a criminal defendant to waive a jury trial. Superior Court Criminal Rule 23(a), identical to Federal Rule 23(a), states: "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the Court and the consent of the State." In *Longoria v. State,* Del.Supr., 168 A.2d 695 (1961), *appeal dismissed,* 368 U.S. 10, 82 S.Ct. 18, 7 L.Ed.2d 18 (1961), we held that the Delaware constitution does not give a criminal defendant a right to waive a jury trial. In *Longoria* the State refused to consent to the defendant's waiver of a jury trial under Rule 23(a). The Court ruled "that the State was entitled to insist that the case be tried before a jury." *Id.* at 698. Since *Longoria,* this Court has twice confirmed the "State's right to insist on a jury trial and the trial court's discretion in accepting or refusing to accept a defendant's waiver of his right to trial by jury." *Fetters v. State,* Del.Supr., 436 A.2d 796, 798 (1981). *See also Young v. State,* Del.Supr., 407 A.2d 517 (1979).

■ Because the trial judge denied Polk's motion to waive a jury trial *prior* to the State voicing its objection or consent,

this case presents a question of first impression in Delaware.[5] However, we do not find error in a denial of waiver under these circumstances. Superior Court Criminal Rule 23(a) allows a criminal defendant who has a constitutionally protected right to trial by jury to waive a jury trial provided that the defendant makes an intelligent and voluntary waiver in writing. But, the effectiveness of this waiver is conditioned upon both "the approval of the Court *and* the consent of the State." *Id.* (emphasis added). Under the plain wording of Rule 23(a), a waiver of jury trial will not be effective if the court denies the motion or the State refuses to consent. The Rule does not require both the approval of the court and the assent of the State to reject a defendant's request for waiver. Here the trial judge refused to accept defendant's waiver. In *Fetters*, we indicated that the decision to accept or deny a request for waiver of jury trial is within the discretion of the trial judge. *See Fetters*, 436 A.2d at 798–99. *See also Young*, 407 A.2d at 519 (duty of trial court in allowing or disallowing defendant's motion to waive jury trial is to decide motion with sound and advised discretion).

Of course, a decision committed to the discretion of the trial judge is subject to review for abuse. In *Singer*, the United States Supreme Court implied that where the denial of a bench trial would interfere with the defendant's right to a fair trial, waiver should be permitted. The Court noted that there might be circumstances "where 'passion, prejudice ... public feel-ing' or some other factor may render impossible or unlikely an impartial trial by jury." *Singer*, 380 U.S. at 37–38, 85 S.Ct. at 791 (quoting brief of petitioner (Singer)). Polk asserts that the statistical evidence accompanying his request to be tried by the court rather than by a jury demonstrated a threat to his fair trial rights.

In *Fetters*, we stated that in exercising his discretion over a motion to waive a jury trial, a trial judge must "avoid unreasonable or undue departure from that mode of trial [trial by jury], or from any essential elements thereof, and *with caution increasing* in degree *as the offenses* dealt with *increase in gravity*." *Id.* at 798 (quoting *Patton v. United States*, 281 U.S. at 312, 50 S.Ct. at 263) (emphasis added). Here the judge expressly found that a jury trial would best protect defendant's rights, because a bench trial would result in a loss of the essential element of unanimity of verdict by twelve persons. Because of the severity of the charges, Murder in the First Degree and Attempted Murder in the First Degree, the duty of the trial judge to exercise caution in avoiding departure from trial by jury was clear. The statistics that Polk relied upon were of limited value since they did not include trial results from other counties or jurisdictions. In addition, the study suggested that juries in Sussex County had a relatively greater tendency to impose less than the maximum sentence in capital murder cases. The statistical results are at best inconclusive and thus provide no evidence that Polk could not receive an impartial jury trial.

---

5. While the issue of jury waiver denial despite prosecutorial "consent" has not arisen in Delaware, other jurisdictions have addressed this issue. In *United States v. Clapps*, 3d Cir., 732 F.2d 1148 (1984), *cert. denied*, 469 U.S. 1085, 105 S.Ct. 589, 83 L.Ed.2d 699, the Court of Appeals relied on the discretion of the District Court judge in upholding the denial of a waiver request. While noting that situations could exist in which a jury could not be impartial, it ruled that the trial court did not abuse its discretion in denying defendant's request. *Id.* at 1151. (citing *Singer*, 380 U.S. at 37–38, 85 S.Ct. at 791). *See also United States v. Parker*, 4th Cir., 742 F.2d 127 (1984), *cert. denied*, 469 U.S. 1076, 105 S.Ct. 575, 83 L.Ed.2d 514; *Mason v. United States*, 10th Cir., 250 F.2d 704, 706 (1957) (right to waiver of jury trial is not absolute; rather, it is within discretion of trial court); *State v. Pandolfo*, N.D.Supr., 98 N.W.2d 161 (1959) (trial court properly refused waiver request despite State's consent, as no constitutional right to bench trial exists). *But see People v. Terry*, 2 Cal.3d 362, 85 Cal.Rptr. 409, 417, 466 P.2d 961, 969 (1970) (determination of waiver of jury left to consent of defendant and prosecutor by state constitution; concurrence of court unnecessary in this determination).

## V

In sum, we find no error in the rulings of the trial court. The defendant's conviction is AFFIRMED.