IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE      )
                               )
     V.                  )     I.D. NO.: 1603010349B
                               )
JAYVON STEVENSON,      )
                               )
     Defendant.     )

## ORDER

And now, this 10ʰ day of September, 2020, the Court makes the following findings and conclusions:

1. This is a collateral attack on the Defendant's conviction on 2 counts of Possession of a Firearm by a Person Prohibited ("PFBPP") and 2 counts of Possession of Ammunition by a Person Prohibited ("PABPP"). The facts giving rise to the charges were synopsized by the Delaware Supreme Court in its Opinion affirming Defendant's convictions:

> "The events leading to the seizure of the firearms and Stevenson's arrest began during the early-evening hours of March 12, 2016 when La'Shonda Brown entrusted her automobile to Anthony Wilson. Hours later, Brown received a phone call notifying her that "two guys" were driving her vehicle and "doing some crazy stuff." Concerned, Brown sent her brother, Roland Comer, to retrieve the vehicle. Comer eventually found both the vehicle—parked on 3rd Street in the City of Wilmington—and Wilson, who was standing nearby with Stevenson. After Comer agreed to drop Wilson and Stevenson off at another location, all three got in the vehicle. Comer drove, Wilson sat in the front-passenger seat, and Stevenson sat in the rear, behind the driver. Minutes later, Wilmington police observed Comer veer on to the side of the road and stop without utilizing a turn signal and that Wilson was not wearing a seat belt. The police therefore stopped the car and arrested

1

Wilson and Stevenson, both probationers, for violating curfew. Upon shining a flashlight into the area where Stevenson sat, an officer glimpsed the "silver slide of a handgun" situated beneath the driver's seat, where Stevenson's "toes would probably be tucked." A semi-automatic handgun loaded with six rounds and bearing an obliterated serial number was subsequently recovered from that location. A search of the vehicle ensued, yielding the recovery of another firearm—a loaded Smith & Wesson revolver—from the vehicle's center console. The police took Comer, Wilson, and Stevenson into custody. Later that evening, the police collected DNA samples from the three individuals, and the firearms were swabbed for DNA. Both Brown and Comer testified at trial. Each denied having prior knowledge of the firearms. Numerous officers testified, including the arresting officer, who stated that Stevenson could have reached the loaded revolver found in the console from where he was sitting in the vehicle. The prosecution presented DNA evidence without objection by Stevenson. There was no DNA evidence linking Stevenson to the gun that was found at his feet under the driver's seat, but he was identified as a "potential DNA contributor" to a DNA sample found on the Smith & Wesson revolver's hammer. That sample was "consistent with being a mixture of at least two individuals." Wilson was also identified as a potential contributor to the hammer sample. Notably, a DNA single-source profile found on the Smith & Wesson cylinder release was "consistent with [Wilson's] known DNA profile," and, prior to Stevenson's trial, Wilson pleaded guilty to possessing the Smith & Wesson revolver."[1]

2. Because the Defendant had been convicted of Assault, 2d degree within 10 years of this offense, he was subject to mandatory sentencing pursuant to 11 *Del. C.* § 1448(e)(1)(b) to five years imprisonment on each count of PFBPP, or 10 years of mandatory time.[2] This mandatory sentence was duly imposed shortly after his conviction and defendant filed a timely appeal.

---

[1] *State v. Stevenson*, 2018 WL 1136524, at *1 (Del. Mar. 1, 2018).
[2] 11 *Del. C.* § 1448(e)(1)(b).

3. Defendant's appellate case is unusual and the Court therefore comments on it in more detail than it might in the "ordinary" Rule 61 case.

4. Defendant was represented initially on appeal by his trial counsel, who filed a "no merit" brief and a motion to withdraw as counsel pursuant to D.R.A.P. Rule 26(c). The Supreme Court did not, however, simply grant the motion and deny the appeal. Rather, the Court granted counsel's motion to withdraw but appointed new counsel to press what the Court apparently believed were some potentially meritorious arguments on appeal.

5. New counsel (who remains on to press this Rule 61 motion) was appointed and new counsel then filed a second brief on appeal, making two arguments: 1) that prior counsel was ineffective in failing to seek a judgment of acquittal at the close of the State's case and 2) that the Superior Court committed "plain error" in not granting judgment of acquittal *sua sponte* at the close of the State's case.

6. When the Supreme Court ruled that claims of ineffective assistance of counsel are not cognizable on direct appeal, it was hardly turning over new ground. This has been the law in Delaware for a long time.[3] The Court refused to deal with this claim and referred the Defendant to the traditional means of attacking a

---

[3] *See Desmond v. State*, 654 A.2d 821, 829 (Del. 1994); *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990); *Duross v. State*, 494 A.2d 1265, 1267 (Del. 1985).

conviction with an ineffective assistance of counsel claim: the Rule 61 process in Superior Court. Indeed, that is precisely what Defendant has done here.

7. But on the other issue raised, the Court did rule on the merits: that there was no "plain error" in failing to grant a motion for judgment of acquittal *sua sponte*, as the Court found that:

> "Our review of the evidence admitted at trial in the light most favorable to the prosecution leads us to conclude that a rational jury could find the essential elements of each of the crimes charged beyond a reasonable doubt. Therefore, we cannot fault the Superior Court for failing to take this case from the jury much less find plain error.[4]

8. So now, as invited by the Supreme Court, the Defendant is back before this Court, arguing that his trial counsel was ineffective for failing to seek a judgment of acquittal. Defendant claims that had counsel sought acquittal at the close of the State's case, that motion would have been granted or, at a minimum, it would have been reviewed by the Supreme Court under a *de novo* standard of review and not the plain error standard that failed on direct appeal. Defendant then expends substantial energy and pages urging that the State's evidence was insufficient to allow the matter to proceed to a jury verdict.

9. But the obvious problem with Defendant's argument here is that the Supreme Court concluded that "a rational jury could find the essential elements of

---

[4] *Stevenson*, 2018 WL 1136524, at *3.

4

each of the crimes charged beyond a reasonable doubt."[5]  This finding was specifically *not* conditioned on the fact that Defendant had to meet a plain error standard of review.  Rather, the Court said, in effect, that not only was it not plain error to not grant a judgment of acquittal, but it was not error at all, plain or otherwise.[6]  Undaunted, Defendant presses on, arguing in great detail the evidence and possible other explanations that would vitiate Defendant's guilt.

10.    Without question, this was hardly an overpowering case for the prosecution.  An acquittal, particularly on the charged handgun found in the center console, was a distinct possibility.  Without once again detailing all of the evidence presented, the Court reiterates what the Supreme Court said on the direct appeal: there was enough evidence presented to get the case to the jury.[7]  It was not overpowering evidence, Defendant could have been acquitted, counsel argued the evidence as counsel do, and the jury chose to side with the prosecutor's arguments for conviction and not defense counsel's arguments for acquittal.

11.  Had defense counsel sought an acquittal at the close of the state's case, his request would have been denied.  "Possession" is fundamentally a jury question

---

[5] *Id.*

[6] *Id.*

[7] The standard of review for a motion for judgement of acquittal is whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find a defendant guilty beyond a reasonable doubt of all the elements of the crime. *Cline v. State*, 720 A.2d 981, 982 (Del. 1998) (citing *Davis v. State*, 706 A.2d 523, 524 (Del. 1998); *Monroe v. State*, 652 A.2d 560, 563 (Del. 1995)).

that requires consideration of access, control, intent and all of the surrounding circumstances.[8] Particularly in light of the Supreme Court's findings, it is entirely likely that if this Court had taken the case from the jury, the Supreme Court would have reversed such a ruling as having improperly denied the State the right to have a jury decide the issues presented.

12. Because the Court cannot find prejudice to the Defendant in the process or the result reached by this trial, the Court cannot find that counsel's conduct warrants a new trial for the accused. What little has been added to this record by way of the Rule 61 petition is an affidavit from trial counsel that he did not seek a judgment of acquittal because he did not believe it would be successful.[9] In light of the rulings in the Supreme Court and this Court's review, he was correct. Because his judgment was correct, it cannot be said that his judgment fell below an "objective standard of reasonableness."[10]

---

[8] *Maddrey v. State*, 975 A.2d 772, 775-76 (Del. 2009).

[9] There is further comment – but not really argument – in the pleadings whether Defendant would have been better off waiving a jury and proceeding to a bench trial. Apparently, Defendant chose not to do so. But even if he had sought to waive to the bench, not only is a showing of prejudice a gamey proposition, there is no evidence that the State would have assented, a necessary precondition to such a waiver. *See Fetters v. State*, 436 A.2d 796, 798 (Del. 1981) (quoting *Patton v. U.S.*, 281 U.S. 276, 312 (1930)).

[10] *See Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant.").

The motion for relief under Rule 61 must therefore be **DENIED**.

**IT IS SO ORDERED**.

Judge Charles E. Butler