STATE vs. WILLIAM MOORE.

*Assault with Intent to Murder,—Elements—Assault—Intent to Kill—Proof—Murder—Degrees of Murder—Malice,—Express,—Implied—Manslaughter—Self-Defense—Reasonable Fear—Combat—Conflicting Evidence—Reasonable Doubt—Presumption of Innocence.*

1.   The jury are the judges of the value, weight and probative force of the testimony of the witnesses.

2.   An assault is defined to be an attempt with force and violence to do injury to the person of another.

3.   An assault with intent to commit murder embraces not only an assault but also an intent to commit murder.

4.   In order to convict the accused of an assault with intent to commit murder, it is incumbent upon the State to prove, beyond a reasonable doubt, that he not only committed the assault, but also that he committed it with the intent to murder, so that if the person assaulted had died from the effects of the injury received, the accused would have been guilty of murder.

5.  The intent to commit murder is an essential ingredient of the crime, and it must be proved to the satisfaction of the jury.

6.  The intent to commit murder may be shown, either by direct evidence, as by the express confession or declaration of the accused that he committed the assault with such intent, or by indirect evidence, as by the acts and conduct of the accused, or by other circumstances from which such intent may naturally and reasonably be inferred.

7.  It is a principle of law that every person must be presumed to intend the natural and probable consequences of his voluntary and wilful act.   The use of a deadly weapon against another carries with it such a presumption, unless used under such circumstances as to rebut the presumption.

8.  The intent to commit murder is provable by, or inferable from the voluntary, unlawful use of a loaded revolver, an axe, or other weapon, likely to take human life, or to cause great bodily harm, when so used.

9.  Whether the crime of an assault with intent to commit murder, if it had been completed by the death of the person assaulted, had been murder of the first or second degree, would be immaterial, as either would meet the requirements of the statute.

10.  Murder is the unlawful killing of a human creature in being with malice aforethought, either express or implied.

11.  Malice may be shown by the deliberate selection and use of a deadly weapon; it may be implied from any unlawful act, such as denotes a wicked heart fatally bent on mischief, or a reckless disregard of human life.

12.  Manslaughter is the unlawful killing of a human being without malice, either express or implied, as upon sudden provocation or brawl, in the heat of blood, or transport of passion, without time for reflection or for the blood to cool.

13.  When death is produced by the use of a deadly weapon, the provocation must be great to reduce the crime from murder to manslaughter.

14.  When a person is charged with an assault with intent to commit murder, and it is shown that he would not have been guilty of murder had death resulted from the assault, but of manslaughter only, the accused cannot be found guilty of the intent to commit murder.

15.  Whenever an unlawful act from which death ensued, or, as in the case of an assault with intent to commit murder, might have ensued, is proven to have been committed, without justification or excuse, the law presumes that such act was committed with malice.

16,  A slight assault will not excuse or justify the killing of the assailant with a deadly weapon.

17. In repelling or resisting an assault, no more force may be used than is necessary for the purpose, and if the person assailed use in his defense greater force than is necessary, he becomes the aggressor.

18. Although an accused was first attacked, and the attack was of such a character as to create in his mind a reasonable fear of death or great bodily harm, still it was his duty to retreat, if he could safely do so, or to use such other reasonable means within his power, to avoid killing his assailant.

19. When one is attacked, and from the character of the attack, he has reasonable cause to believe that he is in imminent danger of death or great bodily harm, and he has no other reasonable means of escape, the killing of his assailant with a deadly weapon would be a justifiable act of self-defense.

20. It is not sufficient that the accused, at the time of shooting his assailant, believed himself to be in danger of death or great bodily harm, but the circumstances must have been such, in the judgment of the jury, as to justify a reasonable man in such belief, and that there was no other reasonable way of escaping from such danger.

21. When there is a combat and the accused withdraws therefrom, with the honest intent to escape, and he is pursued, he has the right in self-defense to use so much force as is necessary under the circumstance to repel his pursuer and to protect himself.

22. If a person is attacked and knocked down by another, he may not, on getting up, shoot his assailant, if he knew, or should have known that it was not necessary to save his life or to protect himself from great bodily harm.

23. Where the testimony is conflicting with respect to any material element of the crime, the jury should reconcile it if they can; if they cannot, they should then accept such of it as they consider, under all the circumstances, is most worthy of credit and belief, having regard to the ignorance or intelligence of the witnesses, their interest or bias, and the opportunity which they had of observing and knowing the things respecting which they testified.

24. To warrant a conviction, it is incumbent upon the State to prove, beyond a reasonable doubt, every material ingredient of the crime charged.

25. An accused is presumed to be innocent until his guilt is proved to the satisfaction of the jury, beyond a reasonable doubt.

26. Where one is charged with an assault with the intent to commit murder, and the jury believe beyond a reasonable doubt that he did commit the assault, but are not satisfied that there was an intent to commit murder, they should find a verdict of guilty of an assault only.

Del. cases cited:   *State vs. Di Guglielmo,*  4 *Penn.* 336,

(55 *Atl.* 350); *State vs. Emory*, 5 *Penn.* 126; *State vs. Cephus*, 6 *Penn.* 160; *State vs. Harmon*, 4 *Penn.* 580; *State vs. Miele*, 1 *Boyce* 33 (74 *Atl.* 10).

### (*January 10, 1910.*)

Judges CONRAD and WOOLLEY sitting.

*Josiah O. Wolcott*, Deputy Attorney-General, for the State.

*J. Frank Ball* for the defendant.

Court of General Sessions, New Castle County, January Term, 1910.

INDICTMENT FOR ASSAULT WITH INTENT TO COMMIT MURDER, (No. 16, January Term, 1910).

WOOLLEY, J., charging the jury:

Gentlemen of the jury:—It is charged by this indictment, that William Moore, the prisoner at the bar, unlawfully, feloniously and with violence assaulted John J. O'Neil, the prosecuting witness, with intent him, the said John J, O'Neil to kill and murder.

In support of this charge, it is claimed by the State, that on the twenty-fifth day of October, 1909, O'Neil, the prosecuting witness, called the prisoner out of a pool-room in Delaware City, and engaged the prisoner in conversation relative to a statement the prisoner is alleged to have made about him, which statement was offensive to O'Neil. In this conversation, O'Neil is alleged to have warned the prisoner against a repetition of the offensive words and to have tapped the prisoner upon the shoulder, not in violence but to impress the warning. It is claimed that the prisoner then backed off the porch upon which the two men had been standing, and with his left hand made an effort to take something from within the right side of his coat; that O'Neil, thinking

the prisoner was reaching for a revolver, followed the prisoner as he backed away, and in order to prevent him drawing a weapon struck him and knocked him down; and when the prisoner arose and continued, as it is alleged, to direct his hand to a point under his coat, O'Neil struck him several more blows and knocked him down again. It is alleged that O'Neil the prosecuting witness, concluding that the prisoner had no weapon, then desisted and turned and walked away, and that when he had gone from nine to fourteen feet from the place of conflict, the prisoner drew a revolver and fired three shots at him and hit him twice, wounding him in the side and back.

It is not denied by the prisoner that he fired the revolver three times and inflicted the two wounds upon O'Neil, but he claims that as soon as he came out of the pool-room at O'Neil's request, O'Neil became abusive in his language and threatening in his manner; that the prisoner stepped down from the porch on which he and O'Neil had been standing and backed away from O'Neil, making no attempt to get his revolver, and having no intent then present to use it; that O'Neil followed and struck him in the jaw and knocked him down; that being down, O'Neil pulled him up, and striking him several blows about the face and back of the head, knocked him down the second time; that O'Neil again pulled him up, continued his blows about the head and knocked him down the third time, and while down the last time kicked him once upon the hip, once upon the arm with which he was shielding his face and once in the pit of the same arm. It is claimed further, that up to this time, the prisoner had not attempted or intended to use a deadly weapon, but having been warned by two men who testified they had heard O'Neil say that he intended killing him, the prisoner, while arising from the last fall and still upon one knee, drew his revolver, aimed it at O'Neil, whom he claims was but three feet from him, and fired, and upon recovering himself upon both of his feet, again aimed the revolver in O'Neil's direction and without seeing him, fired twice more, and that the shooting was done and the wounds inflicted by the prisoner in the necessary defense of his life, and when his mind

Charge.

was made incapable of intelligent thought by the attack made upon him by O'Neil.

The Court will neither recite nor discuss in this charge the testimony produced in this case, because of this testimony, its value, its weight and its probative force, you are the sole judges. The Court, however, will instruct you with respect to the law that bears upon the character of the charge made by this indictment and of the defences urged by the prisoner.

The charge with which the prisoner stands indicted, embraces not only an assault, which has been defined to be an attempt with force and violence to do injury to the person of another, but also an intent to commit murder. In order to convict the prisoner at the bar in manner and form as he stands indicted, it is necessary for the State to satisfy you, beyond a reasonable doubt, that the assault was committed by the prisoner, that it was committed with the intent to murder O'Neil, the prosecuting witness, and that if O'Neil had died from the effects of the injury received, then the prisoner would have been guilty of murder.

The intent to commit murder is an essential ingredient of this charge, and it must be proved to your satisfaction, just as any other material fact in the case is proved. The intent to commit murder may be shown by direct evidence of the intent; that is, by the express confession or declaration of the accused that he committed the alleged assault with the intent to murder. But the intent to commit murder may also be proved by the acts and conduct of the accused, and other circumstances from which the jury may naturally and reasonably infer the intent charged. For instance, it is a principle of law that every man must be presumed to intend the natural and probable consequences of his own voluntary and wilful act, so that from the use of a deadly weapon against another the jury may infer the intent to commit murder, unless the circumstances of the case satisfy you to the contrary; such intent, as we have said, being provable by and inferable from the voluntary, unlawful use, in a manner or under circumstances perilous to human life, or directly tending to great bodily harm, of a loaded revolver or an axe, or other weapon

which the law considers a deadly weapon, or of any other instrument or missile reasonably likely to take human life when so used. (*State vs. Di Guglielmo*, 4 *Penn*. 336; 55 *Atl*. 350.)

Before you can find the prisoner at the bar guilty of assault with intent to commit murder, you must also find that had O'Neil died from the effects of the injuries received, the prisoner would have been guilty of the crime of murder. It is therefore necessary for us to define to you briefly the crime of murder. But we do not think it necessary to define the different degrees of murder under our statute; for whether the crime, if it had been completed by the death of the victim, had been murder of the first or second degree, would be immaterial, as either would meet the requirements of our statute, and would justify a verdict of guilty of assault with intent to commit murder. The crime of murder is the unlawful killing of a human creature in being with malice aforethought, either express or implied. If the killing is proved, it must be also proved that it was done with malice, either express or implied, before the person charged can be convicted of murder. But such malice may be implied from any unlawful act, such as in itself denotes a wicked heart fatally bent on mischief, or a reckless disregard of human life. The deliberate selection and use of a deadly weapon has been held to be evidence of malice; and where malice exists, together with the killing, the crime of murder is complete.

Manslaughter is the unlawful killing of a human being without malice either express or implied, and is a crime which is committed when the death-wound is given by the accused without malice and upon sudden provocation, as in a sudden brawl or altercation between the accused and the deceased, in the heat of blood or in a transport of passion, upon sufficient provocation, without time for reflection and deliberation and for the blood to cool. When death is produced by a deadly weapon, the provocation must be great to reduce the crime from murder to manslaughter, as no mere words, however insulting or offensive, no defiant gestures or weak assault will constitute such provocation.

Charge.

(*State vs. Emory*, 5 *Penn*. 126; *State vs. Cephus*, 6 *Penn*. 160; *State vs. Harmon*, 4 *Penn*. 580.)

If you believe that the crime of which the prisoner would have been guilty, if the prosecuting witness had died from the injuries received, would be manslaughter, you cannot find him guilty of the intent to commit murder, for, as we have said, in manslaughter there is no ingredient of malice. Whether there is any evidence in this case to satisfy you that there was malice, either express or implied, is one of the questions for you to determine. Malice is implied by law from every deliberate, cruel act committed by one person against another, no matter how sudden such act may be; for the law considers that he who does a cruel act voluntary, does it maliciously, And whenever the act from which death ensued, or, as in this case, might have ensued, is proven by the prosecution, uanccompanied by circumstances of justification, excuse or mitigation, the law presumes that the act was done with malice; and it is thereupon incumbent upon the prisoner to show by evidence that the act was not malicious.

We have been asked by counsel for the prisoner to charge you in respect to the law of self-defense. We will say that a slight assault will not excuse or justify the killing of the assailant with a deadly weapon. The burden of establishing self-defense to the satisfaction of the jury, rests upon the accused. In repelling or resisting an assault, no more force may be used than is necessary for the purpose, and if the person assailed use in his defense greater force than is necessary, he becomes the aggressor.

If O'Neil first attacked the accused, even though the attack was of such a character as to create in the mind of the accused a reasonable belief that he was in danger of death or great bodily harm, it was his duty to retreat, if he could safely do so, or to use such other reasonable means as were within his power, to avoid killing his assailant. No one may take the life of another, even in self-defense, unless there is no other available means of escape from death or great bodily harm. If one is attacked, and from the character of such attack he had reasonable cause to believe, and did believe, that he was in imminent danger of death or great

bodily harm, and he had no other reasonable means of avoiding or preventing death or great bodily harm, then the killing of the assailant with a deadly weapon would be a justifiable act of self-defense. If, on the other hand, the attack was of a trifling character, and manifested no purpose or intention on the part of the assailant to inflict any serious injury, the repelling of such attack by the use of a weapon likely to produce death would not be an act of justifiable self-defense.

In ascertaining whether the accused was in any danger of injury at the hands of O'Neil when he fired the shots, and, if in such danger, whether he took the proper precautions to avoid such danger, the jury should consider the facts and circumstances of the case as disclosed by the witnesses. In order to justify or excuse the accused in firing the shots, it is not sufficient that he at the time believed himself to be in danger of death or great bodily harm at the hands of O'Neil, but the circumstances must have been such, in the judgment of the jury, as to justify a reasonable man in such belief, and, further, that there was no reasonable way of avoiding or escaping from such danger except by slaying the assailant. If you should believe that the prisoner withdrew from the combat and retreated therefrom, with the honest intent to escape, and was pursued and unlawfully assaulted, then the prisoner had the right in self-defense to use so much force as was necessary under the circumstances to repel the attack upon him and protect himself.

If you are satisfied that the prisoner, after being so attacked and knocked down, arose and shot O'Neil, when he knew, or should have known, it was not necessary in order to save his life or protect himself from great bodily harm, his act was an unlawful one, If you believe that the prisoner, at the time he shot O'Neil, was in such a condition, caused by being beaten and knocked down and kicked, that he was incapable of thinking intelligently, and of discerning, you should consider such condition in reaching your verdict in this case. (*State vs. Miele,* 1 *Boyce* 33; 74 *Atl.* 10.)

Where there is a conflict in the testimony, it is the duty of the

Verdict.

jury to reconcile such conflict, if you can—and the conflict may arise either with respect to acts from which the fact of the assault may be proved, or with respect to acts from which the intent of the assault may be inferred. If you cannot reconcile the testimony, you should then accept such of it as you consider, under all the circumstances, is most worthy of credit and belief, having regard to the ignorance or intelligence of the witnesses, their interest or bias, and the opportunity which they had of observing and knowing the things respecting which they testified. In order to convict the prisoner, it is incumbent upon the State to prove, beyond a reasonable doubt, every material ingredient of the crime charged. In every criminal case the accused is presumed to be innocent until his guilt is proved to the satisfaction of the jury beyond a reasonable doubt.

If you are not satisfied from the evidence in this case, beyond a reasonable doubt, that the prisoner at the bar committed the assault upon the prosecuting witness, your verdict should be not guilty. If, however, you believe beyond a reasonable doubt that he did commit the assault, but are not satisfied that there was an intent to commit murder, your verdict should be, not guilty in manner and form as he stands indicted, but guilty of assault only. But if you believe that the prisoner not only committed the alleged assault, but at the time of its commission, it was his intention to murder John J. O'Neil, and that had John J. O'Neil died from the effects of the injuries received, the crime would have been murder, your verdict should be, guilty in manner and form as he stands indicted.

Verdict, not guilty.