# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | I.D. # 1802010652 |
| | ) | |
| KARIEEM HOWELL, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: December 20, 2019
Decided: March 23, 2020

**Upon Defendant's Motion for Judgment of Acquittal:
DENIED**

1.    The defendant, Karieem Howell, seeks judgment of acquittal as to his convictions for two counts of drug dealing and one count of possession of a firearm with an obliterated serial number. Howell argues the State's evidence was not sufficient to sustain a guilty verdict as to any of those three charges.[1] Howell's motion requires the Court to consider whether the physical evidence of drug dealing found at two residences linked to Howell, coupled with eyewitness testimony implicating Howell in drug dealing and text messages suggestive of drug dealing, was sufficient to allow the fact finder to conclude that Howell was dealing drugs and possessed the firearm in question. For the reasons that follow, I conclude the

---

[1] Howell also was convicted of Conspiracy Second Degree and Possession of Drug Paraphernalia. He does not appear to challenge the sufficiency of the evidence as to those charges.

evidence was more than sufficient to support the jury's verdict. Defendant's motion therefore is denied.

## FACTUAL BACKGROUND

2.     Howell and his co-defendants were indicted on multiples charges of drug dealing, possession of a firearm during the commission of a felony ("PFDCF"), conspiracy, possession of a weapon with an obliterated serial number, and various misdemeanor drug charges. The indictment stemmed from joint investigations by the Delaware State Police and the New Castle County Police into suspected drug dealing at two residences: 12 Bradbury Drive in New Castle, Delaware ("12 Bradbury") and 23 Aldershot Drive in Newark, Delaware ("23 Aldershot"). The State alleged Howell and his co-defendants conspired and dealt drugs from both locations in January and February 2018.

3.     Howell's co-defendants included his mother, Sharon Howell, and his brother, Malique Howell.[2] Malique pleaded guilty to drug dealing and PFDCF. Howell elected to go to trial. After a five-day trial, the jury found Howell guilty of two counts of Drug Dealing, Conspiracy Second Degree, Possession of a Weapon

---

[2] The Court refers to Malique and Sharon by their first names to distinguish them from Defendant. No disrespect is intended.

2

with an Obliterated Serial Number, and Possession of Drug Paraphernalia. The jury found Howell not guilty of PFDCF.[3]

4.      Howell's Motion for Judgment of Acquittal (the "Motion") relates to the two drug dealing charges and the weapon charge. At trial, Howell testified and admitted to dealing drugs in the past, but denied that he was dealing drugs in January and February 2018, which was the time period alleged in the indictment. The evidence the State presented at trial, however, was more than enough to allow a reasonable jury to convict Howell either as the principal or as an accomplice in all the charges at issue in this Motion.

5.      The State presented compelling evidence linking Howell to drug dealing activity at both 12 Bradbury and 23 Aldershot. The evidence permitted the jury to conclude that 12 Bradbury, which was Sharon's home, was "the spot" where large quantities of marijuana were stored.[4] When Delaware State Police executed a search warrant at 12 Bradbury on February 16, 2018, they seized substantial evidence of drug dealing. During the search, in an unfinished area of the basement, police found a picnic table with a vacuum sealing machine, digital scale, numerous large plastic "vacuum sealer" bags, and visible marijuana "shake," which the police

---

[3] At the conclusion of the State's evidence, the Court granted Howell's motion for judgment of acquittal as to four of the five PFDCF charges, which related to four firearms found in the backyard of 23 Aldershot. *See* D.I. 50. The Court denied Howell's motion as to the fifth PFDCF charge, which related to a handgun found in the basement living area of 23 Aldershot. *Id.*

[4] *State v. Howell*, I.D. No. 1802010652 (Trial Transcript) (hereinafter "Trial Tr.") (Mar. 14, 2019) 208-10.

officers testified is the term for marijuana pieces that fall off when marijuana is packaged or repackaged.[5] The police officers collected approximately 100 vacuum sealer bags, all of which had been used and contained marijuana residue or shake.[6] The State's witnesses testified those bags commonly are used to mask the smell of marijuana and to store anywhere from a quarter pound to a pound of marijuana.[7] Police also found ammunition within the unfinished area of the basement.[8] Located approximately ten feet away, in a finished area of the basement, was a bedroom with the name "Reem" in letters on the wall.[9] Testimony established that "Reem" is Defendant's nickname. Elsewhere in the residence, police found two firearms and approximately $2,400 in cash.[10]

6.      In addition to finding his name on the basement bedroom wall, police found a Delmarva Power bill in Howell's name for the residence. During their surveillance of 12 Bradbury in the weeks before the search warrant was executed, police saw Howell visit the residence at least two times.[11] On one occasion, the officers who were conducting surveillance attempted to follow Howell's truck after it left 12 Bradbury, but the driver fled the area evasively and at a high rate of speed.[12]

---

[5] Trial Tr. (Mar. 13, 2019) 60-61.
[6] Id. at 61-64; State's Trial Exhibits (hereinafter "St. Ex.") 4, 5, 43.
[7] Trial Tr. (Mar. 13, 2019) 62; Trial Tr. (Mar. 15, 2019) 72-73.
[8] Trial Tr. (Mar. 13, 2019) 64-65.
[9] Id. at 65.
[10] Id. at 56, 66-68; St. Ex. 37, 41.
[11] Trial Tr. (Mar. 13, 2019) 52-53.
[12] Id. at 104-05, 132-33.

On February 2, 2018, two weeks before the search warrant was executed, Howell sent a text message to Malique stating "Pay somebody to make ya moves . . . because they gotta be watching."[13]

7. Delaware State Police also simultaneously executed a search warrant at 23 Aldershot, a residence Howell owned and where Howell and Malique then were living. 23 Aldershot was a split level home located approximately 50 yards from an elementary school.[14] In the basement of that residence, police found 28 grams of marijuana in a clear plastic bag, a cigar blunt, and $1,300 in cash, along with a 9 millimeter handgun.[15] The handgun had an extended magazine and an obliterated serial number.[16] The part of the gun where the serial number was removed visibly was discolored and "clearly . . . altered."[17] In the basement bedroom, police found a digital scale, a grinder with marijuana residue, $2,300 in cash, 57 grams of marijuana, and a box of ammunition containing various brands of 9 millimeter ammunition.[18] Police found Malique's passport in a drawer in that basement bedroom.[19] The basement bedroom closet also contained several vacuum sealer bags that were empty but appeared to have been used previously.[20]

---

[13] St. Ex. 26.
[14] Trial Tr. (Mar. 13, 2019) 140-41.
[15] Id. at 141-43.
[16] Id. at 143; St. Ex. 19, 42.
[17] Trial Tr. (Mar. 13, 2019) 144-45.
[18] Id. at 145-49.
[19] Id. at 149.
[20] Id. at 149-50.

8.     In the upstairs bedroom of 23 Aldershot, police found a passport and vehicle title belonging to Howell.[21] In a hallway closet adjacent to that bedroom, police located $24,000 in cash and a blue backpack containing Howell's driver's license, social security card, and medical cards, along with a box containing 9 millimeter, .40 caliber, .45 caliber, and .223 caliber ammunition.[22] A money counter also was found in that closet.[23] Outside 23 Aldershot, behind a shed in the backyard, the police found four firearms, including two shotguns, a .223 caliber rifle, and a .22 caliber rifle.[24]

9.     In addition to the physical evidence collected at each residence, the State presented the testimony of Brian Caldwell, who testified that he regularly purchased one to two pounds of marijuana from Howell and then sold that marijuana to consumers.[25] Caldwell was arrested for drug dealing on February 22, 2018 and agreed to cooperate with the State by testifying at trial. When he was arrested and his home was searched, police found 340 grams of marijuana, $11,400 in cash, and used plastic vacuum sealer bags with markings similar to those on the bags found at 12 Bradbury.[26] Caldwell testified he had been purchasing marijuana from Howell for more than two years, and he purchased approximately two pounds of marijuana

---

[21] *Id.* at 151-52; St. Ex. 16.
[22] Trial Tr. (Mar. 13, 2019) 151-54; St. Ex. 6, 7, 11.
[23] Trial Tr. (Mar. 13, 2019) 154.
[24] *Id.* at 158-62.
[25] Trial Tr. (Mar. 14, 2019) 97-100.
[26] St. Ex. 54.

at a time every week or two.[27] Caldwell testified that Howell confided that he sold marijuana to others, including two specific individuals to whom Howell sold at least 15-20 pounds of marijuana.[28]

10.    When Caldwell wanted to purchase marijuana, he made arrangements with Howell directly, although at times he gave the money to Sharon when Howell was not home.[29] Caldwell testified that on February 13, 2018, he retrieved marijuana from 12 Bradbury after arranging to do so with Howell and after giving the money for the purchase to Sharon.[30] Caldwell's phone log showed regular communications between Caldwell's and Howell's phones in January and February 2018, including several communications on February 13th.[31] Older text messages between the two contained references to money Caldwell owed Howell at various times, which Caldwell testified were amounts he owed Howell for marijuana Howell had fronted.[32] Caldwell also testified that Howell at one point offered to sell Caldwell a gun without a serial number.[33]

11.    In addition to Caldwell, the State also called Malique during its case-in-chief. Through Malique's testimony, the State introduced various text messages

---

[27] Trial Tr. (Mar. 14, 2019) 98-100, 122.
[28] *Id.* at 124-25.
[29] *Id.* at 101; St. Ex. 49.
[30] Trial Tr. (Mar. 14, 2019) 103-06.
[31] St. Ex. 55.
[32] Trial Tr. (Mar. 14, 2019) 113-117.
[33] *Id.* at 125.

7

recovered from his phone, including text messages dated January 23, 2018, in which Malique asked the individual, "Yo bro Reem said how long till the rest," and the recipient responded "when I get everybody money tomorrow."[34]

12. The State also offered the expert testimony of Detective Trevor Riccobon of the New Castle County Police Department. The detective testified that marijuana typically sells for $1,500 to $3,000 a pound and can be sold in various quantities from an ounce to multiple pounds.[35] According to the detective, it is common for members of a drug dealing organization to utilize more than one location for their operations.[36] It also is common for drug suppliers to "front" product to lower-level dealers with the understanding that the dealer will pay for the product once the drugs are sold to consumers.[37] Detective Riccobon testified that the text messages recovered from Malique's phone were indicative of drug dealing, including what appeared to the detective to be references to quantities sold and monies owed, as well as other common drug "lingo."[38] In examining text messages between Caldwell and Howell, Detective Riccobon testified the conversations reflected a sale of multiple pounds of marijuana.[39]

---

[34] *Id.* at 11-13; St. Ex. 60.
[35] Trial Tr. (Mar. 15, 2019) 62-67.
[36] *Id.* at 90-91.
[37] *Id.* at 79-80.
[38] *Id.* at 68-69, 75-80, 83-88; St. Ex. 24, 26, 43, 51, 60, 62-64.
[39] Trial Tr. (Mar. 15, 2019) 78-80; St. Ex. 51.

13. Detective Riccobon opined based on his training and experience that the evidence found at both 12 Bradbury and 23 Aldershot indicated the residents were selling large quantities of marijuana.[40] That evidence included the sheer quantity of used vacuum sealer bags with marijuana residue and "shake," the large amounts of cash, the text messages, and the presence of firearms.[41]

14. After the jury returned its verdict, Howell filed the Motion in a timely manner.[42] Howell's Motion challenges the sufficiency of the State's evidence with respect to Count II (Drug Dealing at 23 Aldershot), Count III (Drug Dealing at 12 Bradbury),[43] and Count V (Possession of a Weapon with an Obliterated Serial Number). The parties fully briefed the Motion once trial transcripts were prepared.

---

[40] Trial Tr. (Mar. 15, 2019) 88-89, 92.

[41] *Id.* at 88-90.

[42] Substantial delay then ensued because, after filing the Motion, Howell's attorney moved to withdraw, believing Howell could not continue to pay his legal fees. That mistaken impression, which apparently was not based on any conversation between Howell and his attorney, readily was corrected at the hearing on the motion to withdraw, when Howell's attorney finally consulted him about the issue. Howell's attorney then ordered the trial transcripts. *See* D.I. 56, 58-59, 61, 63-66, 68, 71.

[43] In his Motion, Howell separately argued that Count III was duplicative of Count II and violated the Multiplicity Doctrine. He abandoned that argument in his reply after the State pointed out that the argument could not be raised in a motion for judgment of acquittal. State's Resp. to Def.'s Mot. for J. of Acquittal ¶ 8. Howell did not argue that Counts II and III were multiplicitous at any earlier stage in the proceedings. Accordingly, the appropriate time to raise this argument is at sentencing. *See U.S. v. Dennard*, 812 F. Supp. 749, 750 (E.D. Mich. 1993) (citing cases). If the Court agrees with Howell that those two counts contravene the Multiplicity Doctrine, the counts will merge for purposes of sentencing. *See U.S. v. Dennard*, 1993 WL 351742, at *6 (6th Cir. Sept. 13, 1993).

## ANALYSIS

15.    Under Superior Court Rule 29, a defendant may move for judgment of acquittal to set aside a guilty verdict.[44]  In considering such a motion, all evidence and the legitimate inferences therefrom must be viewed in the light most favorable to the State.[45]  If any rational trier of fact "could conclude from the evidence that the defendant is guilty beyond a reasonable doubt, a motion for acquittal" must be denied.[46]

### A. The State presented sufficient evidence from which the jury could conclude that Howell was dealing drugs at 23 Aldershot.

16.    Howell first argues that the evidence of drug dealing at 23 Aldershot was not sufficient to sustain his conviction as to Count II. In order to convict Howell for Drug Dealing within 300 Feet of a School, the jury was required to find beyond a reasonable doubt that: (1) Howell knowingly possessed marijuana, (2) when he possessed the marijuana, he intended to deliver it, and (3) he possessed the marijuana within 300 feet of a school.   Howell concedes there was "ample proof" that drug dealing was occurring at the residence,[47] and he does not dispute that the house was within 300 feet of a school. He argues, however, that the State's evidence failed to establish a connection between Howell and that drug activity.  Howell argues the

---

[44] Super. Ct. Crim. R. 29.
[45] *State v. Biter*, 119 A.2d 894, 898 (Del. Super. 1955).
[46] *Jervey v. State*, 1994 WL 35386, at *1 (Del. Feb. 3, 1994).
[47] Def.'s Reply Mem. in Supp. of Mot. for J. of Acquittal 2.

State did not prove that he possessed the drugs found in the residence or that he had the requisite intention to deliver them, even under an accomplice liability theory.

17. The jury was instructed that the term "possession" for purposes of Count II included both actual and constructive possession, and that "constructive possession" meant Howell had reasonable control over the marijuana, meaning he had the power and intention to control the marijuana, either directly or through another person. The jury also was advised that possession could be sole or joint.[48]

18. The State's evidence showed, as Howell concedes, that drug dealing was occurring at 23 Aldershot. That evidence included, among other things, the physical evidence seized from the residence, namely marijuana, a digital scale, significant amounts of cash, several firearms and ammunition, used vacuum sealer bags, and a money counter. The State's physical evidence was not – as Howell argues – limited to the basement area of 23 Aldershot, where Malique slept.[49] Rather, ammunition and approximately $24,000 in cash were found in a closet

---

[48] *See* D.I. 48 at 11-12.

[49] Malique and Howell testified that Malique was the only person who occupied the basement. In this context, the jury was free to disregard that testimony if they found it not credible, even if the testimony is not contradicted. *See Longoria v. State*, 168 A.2d 695, 704 (Del. 1961). But, even if the jury accepted that testimony, the cash, ammunition, and firearms found in other areas of the residence – along with Caldwell's testimony and the text messages admitted at trial – provided the jury sufficient evidence from which to conclude that Howell constructively possessed the marijuana and intended to deliver it.

11

adjacent to Howell's bedroom and near a backpack containing his driver's license and medical cards. Moreover, several other firearms were found in the backyard.[50]

19. In addition, the State presented evidence that Malique was not, as he testified, dealing drugs without Howell's knowledge and participation. Text messages the State introduced, when viewed in a light most favorable to the State, showed that Malique frequently texted various associates about money they owed and quantities of drugs they wanted to buy. He also texted associates stating that Howell ("Reem") wanted to know when money would be delivered to him. Text messages directly between Howell and Malique also reasonably could be interpreted as Howell giving Malique instructions about pricing and quantities of drugs that should be retrieved and delivered to various individuals. The State's witnesses, including Detective Riccobon, drew the connection between those messages and drug dealing. Finally, Caldwell testified that he regularly purchased marijuana directly from Howell, including during January and February 2018. That evidence, taken collectively and viewed in the light most favorable to the State, was enough for the jury to conclude beyond a reasonable doubt that Howell possessed the drugs found at 23 Aldershot and intended to deliver those drugs.

---

[50] Howell argues that nothing more than speculation links the cash found in the closet to drug dealing. That argument is unconvincing. The text messages introduced into evidence linked Howell to drug dealing, and the jury reasonably could infer that the substantial amount of cash found at the residence was the fruit of that endeavor.

**B. After reviewing the State's evidence, a reasonable fact finder could conclude beyond a reasonable doubt that Howell was dealing drugs at 12 Bradbury.**

20.    Much like his argument regarding Count II, Howell argues the State's evidence was not sufficient for the jury to find him guilty beyond a reasonable doubt on Count III, which was the drug dealing charge relating to 12 Bradbury. In order to find Howell guilty of that charge, the jury was required to find that: (1) Howell knowingly possessed marijuana, (2) the marijuana he possessed weighed 4,000 grams or more, and (3) when he possessed the marijuana, he intended to deliver it.[51] Howell renews his argument that the State's evidence was insufficient as to the elements of knowledge, possession, or intent to deliver for Count III. In addition, Howell argues the State did not carry its burden of proving the weight of the drugs Howell allegedly possessed.

21.    As with Count II, the State's evidence was more than sufficient to allow a reasonable fact finder to conclude beyond a reasonable doubt that Howell possessed marijuana and had the requisite knowledge and intention to deliver it. The physical evidence seized at 12 Bradbury, coupled with Detective Riccobon's expert testimony, provided compelling evidence that drug dealing was occurring at that residence. The State's evidence also established a nexus between Howell and the

---

[51] The jury also was instructed that they could consider three lesser-included offenses for Count III, but they unanimously found Howell guilty of the indicted offense. *See* D.I. 48 at 19-25.

13

drug activity at that location. Caldwell testified he regularly purchased marijuana from Howell, and 12 Bradbury was "the spot" where he often would do so, including on February 13, 2018, when Caldwell picked up two pounds of marijuana from Sharon after arranging the transaction with Howell. The police officers who observed 12 Bradbury in the weeks before the search warrant was executed saw Howell visiting the house. During the search, along with the evidence of drug dealing, police located a recent utility bill addressed to Howell. The drug dealing operations were located in plain sight in the basement, mere feet away from the basement bedroom where Howell previously lived and where his name still hung on the wall. That evidence was enough for the jury to conclude Howell at least constructively possessed marijuana at 12 Bradbury. In addition, as explained in subsection A, above, Caldwell's testimony and the text messages admitted into evidence were more than sufficient to allow the jury to conclude that Howell actively was participating in drug dealing operations with Malique and thereby had the requisite knowledge and intention to satisfy Count III's elements.

22.     As to the weight of the marijuana possessed, the State's evidence was circumstantial but nevertheless was sufficient to sustain the jury's verdict. The State charged Howell with dealing 4,000 or more grams of marijuana between January 17 and February 16, 2018. 4,000 grams equates to approximately 8.82 pounds of marijuana. Although no significant quantity of marijuana actually was seized at 12

14

Bradbury, there was $2,400 in cash located at the residence. Detective Riccobon testified a pound of marijuana sells for between $1,500-$3,000 a pound. Caldwell testified he regularly purchased two pounds of marijuana from Howell, most recently on February 13, 2018. Caldwell further testified that he knew that Howell sold substantial quantities of marijuana to other acquaintances. The text messages the State introduced supported Caldwell's testimony, namely that Malique and Howell were conspiring to deal drugs and that Malique regularly was selling as little as a quarter pound of marijuana up to multiple pounds. Moreover, Detective Riccobon testified the used vacuum sealer bags that the police seized during the search, which contained marijuana "shake" and residue, typically are used to store a quarter pound to one pound of marijuana. There were approximately 100 such bags admitted into evidence. That evidence, taken as a whole, was sufficient to allow a jury to conclude beyond a reasonable doubt that Howell possessed at least 4,000 grams of marijuana within the time frame alleged in the indictment.

### C. The State's evidence was sufficient to sustain Howell's conviction for possessing a firearm with an obliterated serial number.

23.    Finally, Howell argues his conviction for Count V must be vacated because the State's evidence was not sufficient to prove beyond a reasonable doubt that he possessed the firearm in question or that he knew the serial number on the firearm was obliterated. Again, Howell's argument is unconvincing. In order to find Howell guilty, the jury was required to find that he knowingly possessed a

15

firearm with a removed or obliterated serial number, and that Howell knew the serial number was removed. The jury could find that the possession element was satisfied if it found Howell constructively possessed the firearm, meaning that he knew about its presence and had the ability and intention to control it either directly or through another person.

24.    The firearm in question was found in the basement living area of Howell's residence. Although Malique and Howell testified that area exclusively was Malique's, the jury was free to weigh their credibility and their motivations for that testimony. Even if the jury accepted that testimony, other evidence the State presented was sufficient to support the jury's conclusion that Howell constructively possessed the firearm and was aware that the serial number was removed or obliterated. Howell's backpack contained 9 millimeter ammunition, which was the same caliber as the firearm at issue. No other 9 millimeter firearm was found in the residence. The obliteration of the serial number on the firearm was visible to the naked eye. Finally, Caldwell testified that Howell previously offered to sell him a "dirty" weapon, which Caldwell explained was a firearm without a serial number. That evidence and testimony was enough to allow the jury to find Howell guilty of Count V.

25.     For all the foregoing reasons, Karieem Howell's Motion for Judgment of Acquittal is **DENIED.  IT IS SO ORDERED.**

_Abigail M. LeGrow_
Abigail M. LeGrow, Judge

Original to Prothonotary
cc:     Michael B. Cooksey, Deputy Attorney General
        Samuel R. Kenney, Deputy Attorney General
        Joseph A. Hurley, Esquire